1   **KJC LAW GROUP, A.P.C.**
2   Kevin J. Cole (SBN 321555)
    9701 Wilshire Blvd., Suite 1000
3   Beverly Hills, CA 90212
    Telephone: (310) 861-7797
4   e-Mail: kevin@kjclawgroup.com
5
    Attorney for Plaintiff
6   *Mariah Moses*
7
8                    **UNITED STATES DISTRICT COURT**
9                    **CENTRAL DISTRICT OF CALIFORNIA**
10
11  MARIAH MOSES, individually and      CASE NO.
    on behalf of all others similarly
12  situated,                           **CLASS   ACTION   COMPLAINT**
                                        **FOR:**
13         Plaintiff,
                                        1. **Violation   of   California's**
14  v.                                     **Unfair Competition Law, Cal.**
                                           **Bus. & Prof. Code §§ 17200,** *et*
15  ARHAUS, INC., a Delaware               *seq.***;**
    corporation; and DOES 1 to 10,      2. **Violation of California's False**
16  inclusive,                             **Advertising Law, Cal. Bus. &**
                                           **Prof. Code §§ 17500,** *et seq.***;**
17         Defendants.                   3. **Violation   of   the   California**
                                           **Consumer Legal Remedies Act,**
18                                         **Cal. Civ. Code §§ 1750,** *et seq.***;**
                                           **and**
19                                       4. **Fraudulent Concealment.**
20
21                                      Filed Concurrently:
22
23                                       1. Plaintiff's CLRA Venue
24                                          Affidavit
25
26                                      (JURY TRIAL DEMANDED)
27
28

Plaintiff Mariah Moses ("Plaintiff"), individually and on behalf of all others similarly situated, complains and alleges as follows based on personal knowledge as to herself, on the investigation of her counsel, and on information and belief as to all other matters. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth in this complaint, after a reasonable opportunity for discovery.

## NATURE OF ACTION

1.     This class action aims to hold Arhaus, Inc. ("Arhaus") liable for its unlawful, unfair, and fraudulent business practice of advertising fictitious prices and corresponding phantom discounts on *nearly every product* sold through its website (https://www.arhaus.com/) and retail locations. This practice of false reference pricing occurs when a retailer fabricates a fake regular, original, and/or former reference price, and then offers an item for sale at a deeply "discounted" price. The result is a sham price disparity that misleads consumers into believing they are receiving a good deal, thereby inducing them into making a purchase. Companies like Arhaus drastically benefit from employing a false reference pricing scheme and experience increased sales.

2.     The California legislature prohibits this misleading practice. The law recognizes the reality that consumers often purchase merchandise marketed as being "on sale" purely because the proffered discount seemed too good to pass up. Accordingly, retailers, including Arhaus, have an incentive to lie to customers and advertise false sales. The resulting harm is tangible—the bargain hunter's expectations about the product he or she purchased is that it has a higher perceived value, and she may not have purchased the product but for the false savings.

3.     The advertised discounts are fictitious because the reference price does not represent a *bona fide* price at which Arhaus previously sold a substantial quantity of the merchandise for a reasonable period of time (or at all) as required by the Federal Trade Commission ("FTC"). In addition, the represented reference

price was not the prevailing market retail price within the three months immediately preceding the publication of the advertised former reference price, as required by California law. The deception is magnified for these products because the representation of the false reference price leads consumers like Plaintiff to believe they are purchasing a product of substantially higher quality and that they are purchasing a product that was previously offered for sale at the significantly higher reference price.

4.    Through its false and misleading marketing, advertising, and pricing scheme, Arhaus violated and continues to violate California law, which prohibits (1) advertising goods for sale as discounted from former prices that are false, and (2) misleading statements about the existence and amount of price reductions. Specifically, Arhaus violated and continues to violate: California's Unfair Competition Law, Business & Professions Code §§ 17200, *et seq.* (the "UCL"); California's False Advertising Law, Business & Professions Code §§ 17500, *et seq.* (the "FAL"); the California Consumer Legal Remedies Act, California Civil Code §§ 1750, *et seq.* (the "CLRA"); and the Federal Trade Commission Act ("FTCA"), 15 U.S.C. §§ 45, 52.

5.    Plaintiff brings this action on behalf of herself and other similarly situated consumers who, like her, have purchased one or more products from Arhaus's online store or retail locations that were deceptively represented as discounted from false former reference prices in order to halt the dissemination of this false, misleading, and deceptive pricing scheme, to correct the false and misleading perception it has created in the minds of consumers, and to obtain redress for those who have purchased merchandise tainted by this deceptive pricing scheme. Plaintiff seeks damages, injunctive relief, and other appropriate relief as a result of Arhaus's sales of merchandise offered at a false discount.

6.    Finally, Plaintiff seeks reasonable attorneys' fees pursuant to California Code of Civil Procedure § 1021.5, as this lawsuit seeks the enforcement

of an important right affecting the public interest and satisfies the statutory requirements for an award of attorneys' fees.

## **THE PARTIES**

7.     Plaintiff Mariah Moses is a citizen of the State of California and resident of Orange County. Plaintiff, in reliance on Arhaus's false and deceptive pricing, purchased a "Paraiso 3-Tier Lantern in Black" (the "Product") on March 20, 2024, from Arhaus's website (https://www.arhaus.com/) for $34.00.[1]

8.     Plaintiff is informed and believes, and upon such information and belief alleges, that Defendant Arhaus, Inc. is a Delaware corporation with its principal place of business in Boston Heights, Ohio.

9.     Plaintiff does not know the true names or capacities of the persons or entities sued as DOES 1 to 10, inclusive, and therefore sues such Defendants by such fictitious names. Plaintiff is informed and believes, and upon such information and belief alleges, that each of the DOE Defendants is in some manner legally responsible for the damages suffered by Plaintiff and the Class members as alleged in this Complaint. Defendants shall together be referred to as "Defendants" or "Arhaus."

## **JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000 and there are over 100 members of the proposed class. Further, at least one member of the proposed class is a citizen of a State within the United States and at least one defendant is the citizen or subject of a foreign state.

11.     The Central District of California has specific personal jurisdiction over Arhaus. Specific jurisdiction over a non-resident defendant exists where: (1)

---

[1] Plaintiff's total purchase price was $48.64, which included taxes and delivery costs.

-4-

1  "[t]he non-resident defendant . . . purposefully direct[s] [it]s activities or
2  consummate[s] some transaction with the forum or resident thereof; or perform[s]
3  some act by which [it] purposefully avails [it]self of the privilege of conducting
4  activities in the forum, thereby invoking the benefits and protections of its laws;"
5  (2) the claim is one that "arises out of or relates to" the defendant's activities in the
6  forum state; and (3) the exercise of jurisdiction comports with "fair play and
7  substantial justice, i.e. it must be reasonable." *Schwarzenegger v. Fred Martin*
8  *Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff need only establish the
9  first two prongs, while it is the defendant's burden to "present a compelling case"
10 that the exercise of jurisdiction would not be reasonable. *Id.*

11       12.     ***Purposeful Availment.*** Under the first prong of the three-part test,
12 "purposeful availment" includes both purposeful availment and purposeful
13 direction, which are two distinct concepts. *Id.* Where a case sounds in tort, as here,
14 courts employ the purposeful direction test. Purposeful direction requires the
15 defendant have "(1) committed an intentional act, (2) expressly aimed at the forum
16 state, (3) causing harm that the defendant knows is likely to be suffered in the forum
17 state." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (citing
18 *Schwarzenegger*, 374 F.3d at 802). On information and belief, Arhaus regularly
19 sells and ships its products to customers in California, including Plaintiff, who
20 purchased and received the Product in Orange County, California. In addition,
21 because Arhaus does a substantial amount of business in California, it is knowingly
22 employing a false reference pricing scheme directed at and harming California
23 residents, including Plaintiff.

24       13.     ***Claim Arising Out of Action in the Forum Prong.*** Under the second
25 prong of the three-part specific jurisdiction test, personal jurisdiction exists where,
26 as here, the claim "arises out of or relates to" the defendant's activities in the forum
27 state. Courts in the Ninth Circuit use a "but for" test to determine whether the claim
28 "arises out of" the nonresident's forum-related activities. In other words, the test is

satisfied if the plaintiff would not have suffered loss "but for" defendant's activities. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Here, Arhaus's contact with the forum—knowingly employing a false reference pricing scheme directed at California residents—is the basis of its violations of various false advertising statutes. But for Arhaus's contact with the forum, Plaintiff (and the thousands of other individuals who purchased Arhaus's deceptively advertised products) would not have suffered harm.

14.   ***Venue.*** Venue is proper in the U.S. District Court for the Central District of California pursuant to 28 U.S.C. § 1391 because Arhaus:

   a)   is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District;

   b)   does substantial business within this District;

   c)   is subject to personal jurisdiction in this District because it has availed itself of the laws and markets within this District; and the injury to Plaintiff occurred within this District.

## **GENERAL ALLEGATIONS**

15.   Arhaus, through its website and retail locations, offers high-end furniture, home décor, and many other products to California consumers. *See* https://www.arhaus.com/.

16.   Unfortunately for consumers, Arhaus's business model heavily relies on deceiving customers with fake sales. On a typical day, Arhaus prominently displays on its landing page some form of sale where all products or a select grouping of products are supposedly marked down. All or nearly all Arhaus products on the site are represented as being significantly marked down from a substantially higher original or reference price, which is prominently displayed to the customer as being the supposed original price (the "Reference Price"), as shown in the following:




*See id.*

17.     By doing this, Arhaus conveys to customers that the product had previously sold in the recent past at the Reference Price, but is being sold to the customer at a substantial discount.

18.     However, this Reference Price in the "sale" is almost always—if not always—a falsely inflated price because Arhaus never sells its items at the Reference Price. In fact, the products Arhaus just released as part of its Spring 2024 collection were initially offered at a "discounted" price:





*See*, *e.g.*, https://www.arhaus.com/collections/outdoor. Surely, the Reference Prices for the Spring 2024 collection cannot be the prevailing market retail price within the preceding three months because the products have never been offered at that price.

19.     The only purpose of the Reference Price is to mislead customers into believing that the displayed Reference Price is an original, regular, or retail price

at which Arhaus usually sells the item or previously sold the item in the recent past. As a result, Arhaus falsely conveys to customers that they are receiving a substantial markdown or discount, when in reality, the alleged discount is false and fraudulent.

20.    On the individual product pages of all (or nearly all) Arhaus products offered on the site, Arhaus represents each product as being marked down and includes this representation beside a crossed-out fake Reference Price. For example, for a Paraiso 3-Tier Lantern in Black (the exact Product Plaintiff purchased) being offered for $34.00, Arhaus displayed the following:

$34.00 $139.00



See https://www.arhaus.com/products/paraiso-3-tier-lantern-in-black.

21.    On information and belief, Arhaus has never sold the Paraiso 3-Tier Lantern in Black for $139.00, and certainly it has not in the three preceding months. These pricing and advertising practices reflecting high-pressure fake sales are patently deceptive. They are intended to mislead customers into believing that they

-8-

CLASS ACTION COMPLAINT

are getting a bargain by buying products from Arhaus on sale and at a substantial and deep discount. The truth is that Arhaus rarely, if ever, sells any of its products at the Reference Price. The Reference Price is, therefore, an artificially inflated price. In turn, the advertised discounts are nothing more than phantom markdowns.

22.     Not only is the scope of Arhaus's false-markdown scheme extremely vast, covering every or nearly every product, the degree of markdowns on individual products is profoundly misleading as well. For one product, the "Rowland Leather Six Piece Motion Sectional" in Lanie Taupe, Arhaus claims the Reference Price is $26,894.00 but currently advertises the sectional as marked down to $15,198.00, an alleged savings of $11,696.00. *See* https://www.arhaus.com/products/rowland-leather-six-piece-motion-sectional. On information and belief, the "Rowland Leather Six Piece Motion Sectional" in Lanie Taupe has never been regularly sold at $26,894.00.

**A.  Plaintiff's Purchase of Falsely Advertised Items from Arhaus**

23.     Plaintiff fell victim to Arhaus's false advertising and deceptive pricing practices. On or about March 20, 2024, Plaintiff visited Arhaus's website to shop for home décor. Plaintiff visited the site from her home in Orange County. Plaintiff browsed the site and observed that nearly every item offered had a Reference Price that was crossed out and a sale price. She found Arhaus's "Paraiso 3-Tier Lantern in Black" and added it to her shopping cart. The price of the Product was listed as:

$34.00  $139.00

24.     In other words, Plaintiff saw that Arhaus represented on the product-description page for the Product that it was supposedly on sale based on a markdown from a Reference Price. The Reference Price was displayed as a substantially higher price containing a strikethrough.

25.     Plaintiff purchased the Product, but before doing so, relied on the representation that the product listed above had in fact been offered for sale, or previously sold, in the recent past at the stated Reference Price. Plaintiff believed

the Product was being offered for over 75% off the Reference Price. Plaintiff relied on Arhaus's representation that the Product was truly on sale and being sold at a substantial markdown and discount, and thereby fell victim to the deception intended by Arhaus.

26.   Plaintiff paid $34.00 for the Product (however, as alleged above, Plaintiff's total purchase price was $48.64, which included taxes and delivery costs).

27.   The Product that Plaintiff ordered was shipped to her in Orange County, California.

28.   On information and belief, the Product that Plaintiff purchased was not substantially marked down or discounted, or at the very least, any discount she was receiving had been grossly exaggerated. That is because the Product that Plaintiff bought had never been offered on Arhaus's website for any reasonably substantial period of time—if ever—at the full Reference Price of $139.00. In fact, for at least the 90-day period prior to Plaintiff's purchase (and likely for a longer period), Arhaus had not offered the Product at the Reference Price.

29.   On information and belief, the Reference Price was a fake price used in Arhaus's deceptive marketing scheme, which is clear from evidence captured on the "WayBack Machine," an online tool that allows users to view screenshots of websites at particular points in time.  *See* https://archive.org/web/ (explaining how the WayBack Machine captures screenshots from websites created years ago, and allows users to see snapshots of websites it has navigated and archived at various time periods; the tool archives more than 150 billion web pages that have appeared since 1996, creating a digital footprint of everything that has appeared on any given website at various points in time); *see also Marten Transport, LTD v. Platform Advertising, Inc.*, No. 14-2464-JWL, 2016 WL 1718862, at *2 (D. Kan. Apr. 29, 2016) (relying on the WayBack Machine as a source of competent evidence).

30.   More specifically, as shown by the WayBack Machine's screen

-10-

capture of Arhaus's website at various points in time, Arhaus has been employing a *reference price scheme on nearly every product for years* (i.e., falsely representing its products are heavily discounted). For example, Arhaus sells a "Henley Nightstand." On August 13, 2022, Arhaus sold that product for $999.00 with a Reference Price of $1,399.00.

**August 13, 2022 Screen Capture:**



*See* https://web.archive.org/henley-nightstand. As of the filing of this Complaint, the Henley Nightstand is still offered on Arhaus's website for $1,199.00, with a Reference Price of $1,699.00.

///
///
///
///
///
///
///
///
///

-11-

**March 24, 2024 Screen Capture:**



*See* https://www.arhaus.com/products/henley-nightstand. Arhaus has never sold the Henley Nightstand at its current Reference Price of $1,699.00 or its former Reference Price of $1,399.00.

31.    As a second example, Arhaus sells a "Paraiso 2-Tier Lantern in Black."[2] On February 4, 2023, Arhaus offered the Paraiso 2-Tier Lantern in Black for $60.00 with a Reference Price of $119.00. Arhaus even included a label stating "Last Chance," which further suggested consumers had to purchase to get the alleged $59.00 savings.

///
///
///
///
///
///

---

[2] Arhaus sells the Paraiso Lantern in "2-Tier" and "3-Tier" versions. Plaintiff purchased the 3-Tier version.

**February 4, 2023 Screen Capture:**



See https://web.archive.org/paraiso-2-tier. As of the filing of this Complaint, the Paraiso 2-Tier Lantern in Black is still offered on Arhaus's website for $27.00, with a Reference Price of $119.00.

**March 24, 2024 Screen Capture:**



See https://www.arhaus.com/paraiso-2-tier-lantern-in-black. Arhaus has never sold the Paraiso 2-Tier Lantern in Black at its Reference Price of $119.00.

32.     Besides the Henley Nightstand and the Paraiso 2-Tier Lantern in Black, there are hundreds—perhaps thousands—of additional examples of products that falsely and deceptively use fake Reference Prices.

33.     Arhaus knows that the prices are fake and artificially inflated and intentionally uses them in its deceptive pricing scheme on its website to increase sales and profits by misleading Plaintiff and members of the putative class to believe that they are buying products at a substantial discount. Arhaus thereby induces customers to buy products they never would have bought—or at the very least, to pay more for merchandise than they otherwise would have if Defendants were simply being truthful about their "sales."

34.     Therefore, Plaintiff would not have purchased the Product listed above, or at the very least, would not have paid as much as she did, had Arhaus been truthful. Plaintiff was persuaded to make her purchase only because of the fake sale based on Arhaus's fake Reference Price scheme.  Plaintiff is susceptible to this recurring harm because she cannot be certain that Arhaus has corrected this deceptive pricing scheme, and she desires to shop at Arhaus's online store in the future. Plaintiff does not have the resources on her own to determine whether Defendants are complying with California law with respect to its pricing practices.

**B.  Research Shows That the Use of Reference Price Advertising Schemes Similar to Arhaus's Deceptive Pricing Scheme Influences Consumer Behavior and Affects Consumers' Perceptions of a Product's Value**

35.     The effectiveness of Arhaus's deceitful pricing scheme is backed by longstanding scholarly research. In the seminal article entitled *Comparative Price Advertising: Informative or Deceptive?* (cited in *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106 (9th Cir. 2013)), Professors Dhruv Grewal and Larry D. Compeau write that, "[b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product." Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative*

-14-

*or Deceptive?*, 11 J. PUB. POL'Y & MKTG. 52, 55 (1992). Therefore, "empirical studies indicate that, as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower price decreases." *Id*. at 56; *see also* ¶ 22, *supra* (using a Reference Price to allege a savings of $11,696). For this reason, the Ninth Circuit in *Hinojos* held that a plaintiff making a claim of deceptive pricing (strikingly similar to the claim at issue here) had standing to pursue his claim against the defendant retailer. In doing so, the Court observed that "[m]isinformation about a product's 'normal' price is . . . significant to many consumers in the same way as a false product label would be." *Hinojos*, 718 F.3d at 1106.

36. Professors Compeau and Grewal reached similar conclusions in a 2002 article: "decades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal." Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Believe It or Not*, 36 J. OF CONSUMER AFFAIRS 287 (2002). The professors also found that "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high." *Id*.

37. In another scholarly publication, Professors Joan Lindsey-Mullikin and Ross D. Petty concluded that "[r]eference price ads strongly influence consumer perceptions of value . . . Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain. This occurs when . . . the retailer highlights the relative savings compared with the prices of competitors." Joan Lindsey-Mullikin & Ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. OF BUS. RESEARCH 67 (2011).

38. Similarly, according to Professors Praveen K. Kopalle and Joan Lindsey-Mullikin, "research has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on

-15-

consumer purchasing decisions." Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price on Consumer Price Expectations*, 79 J. OF RETAILING 225 (2003).

39.     The results of a 1990 study by Professors Jerry B. Gotlieb and Cyndy Thomas Fitzgerald, came to the conclusion that "reference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product." Jerry B. Gotlieb & Cyndy Thomas Fitzgerald, *An Investigation into the Effects of Advertised Reference Prices on the Price Consumers Are Willing to Pay for the Product*, 6 J. OF APP'D BUS. RES. 1 (1990). This study also concluded that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price." *Id*.

40.     The unmistakable inference to be drawn from this research and the Ninth Circuit's opinion in *Hinojos* is that the deceptive advertising through the use of false reference pricing employed here by Arhaus is intended to, and does in fact, influence customer behavior—as it did Plaintiff's purchasing decision here—by artificially inflating customer perceptions of a given item's value and causing customers to spend money they otherwise would not have, purchase items they otherwise would not have, and/or spend more money for a product than they otherwise would have absent the deceptive advertising.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action on behalf of herself and all persons similarly situated pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following class:

> All persons in the United States who purchased one or more of Arhaus's products from Arhaus's website or retail locations between April 2, 2020, through the present (the "Class Period") at a discount

from a higher reference price and who have not received a refund or credit for their purchase(s).

42. The above-described class of persons shall hereafter be referred to as the "Class." Excluded from the Class are any and all past or present officers, directors, or employees of Defendants, any judge who presides over this action, and any partner or employee of Class Counsel. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with her motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

43. In the alternative, Plaintiff seeks certification of the following class pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure:

All persons in the State of California who purchased one or more of Arhaus's products from Arhaus's website between April 2, 2020, through the present (the "Class Period") at a discount from a higher reference price and who have not received a refund or credit for their purchase(s).

44. **Numerosity**. The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but on information and belief, Plaintiff alleges that there are thousands of members of the Class. The precise number of Class members is unknown to Plaintiff.

45. **Typicality**. Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendants' course of conduct as described in this Complaint. All Class members have been deceived (or were likely to be deceived) by Arhaus's false and deceptive price advertising scheme, as alleged in this Complaint. Plaintiff is advancing the same claims and

-17-

legal theories on behalf of herself and all Class members.

46. **Adequacy of Representation**. Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiff and her counsel intend to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interests to those of the Class.

47. **Existence and Predominance of Common Questions of Law or Fact**. Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

    a)   Whether, during the Class Period, Defendants advertised false Reference Prices on products offered on their website.

    b)   Whether, during the Class Period, Defendants advertised price discounts from false Reference Prices on products offered on their website.

    c)   Whether the products listed on Defendants' website during the Class Period were offered at their Reference Prices for any reasonably substantial period of time prior to being offered at prices that were discounted from their Reference Prices.

    d)   Does Defendants' deceptive pricing scheme using false Reference Prices constitute an "unlawful," "unfair," or "fraudulent" business practice in violation of the California Unfair Competition Law, Cal. Bus & Prof. Code §§ 17200, *et seq*.?

    e)   Does Defendants' deceptive pricing scheme using false Reference Prices constitute "unfair, deceptive, untrue or misleading

advertising" in violation of the California Unfair Competition Law, Cal. Bus & Prof. Code §§ 17200, *et seq*.?

f)   Does Defendants' deceptive pricing scheme using false Reference Prices constitute false advertising in violation of the California False Advertising Law under Business & Professions Code §§ 17500, *et seq*.?

g)   Whether Defendants' false Reference Prices on products offered on their website during the Class Period are false representations.

h)   Whether and when Defendants learned that false Reference Prices on products offered on their website during the Class Period are false representations.

i)   Whether Defendants had a duty to disclose to their customers that the Reference prices were fake "original" prices in furtherance of sham sales.

j)   To what extent did Defendants' conduct cause, and continue to cause, harm to the Class?

k)   Whether the members of the Class are entitled to damages and/or restitution.

l)   What type of injunctive relief is appropriate and necessary to enjoin Defendants from continuing to engage in false or misleading advertising?

m)   Whether Defendants' conduct was undertaken with conscious disregard of the rights of the members of the Class and was done with fraud, oppression, and/or malice.

48.   **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Requiring each individual class member to file an individual lawsuit would unreasonably consume

the amounts that may be recovered. Even if every member of the Class could afford individual litigation, the adjudication of at least thousands of identical claims would be unduly burdensome to the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.

49.    By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

50.    **Ascertainability**. Upon information and belief, Defendants keep extensive computerized records of their sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, customer loyalty programs, and general marketing programs. Defendants have one or more databases through which a significant majority of members of the Class may be identified and ascertained, and they maintain contact information, including email addresses and home addresses (such as billing, mailing, and shipping addresses), through which notice of this action is capable of being disseminated in accordance with due process requirements.

51.    The California Class also satisfies each of the class action requirements set forth above. The allegations set forth above with regards to the Class, therefore, apply equally to the California Class.

## CLAIMS FOR RELIEF

### First Cause of Action

### Violation of California's Unfair Competition Law,

### Cal. Bus. & Prof. Code §§ 17200, *et seq*.

### (By Plaintiff Against Defendants on Behalf of Herself and the Class)

52.     Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

53.     California Business and Professions Code §§ 17200 *et seq*., also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" as well as "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

54.     The UCL imposes strict liability. Plaintiff need not prove that Arhaus intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

**"Unlawful" Actions**

55.     A cause of action may be brought under the "unlawful" prong of the UCL if a practice violates another law. Such an action borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under the UCL. The violation of any law constitutes an "unlawful" business practice under the UCL.

56.     Here, by engaging in false advertising, as well as the false, deceptive, and misleading conduct alleged above, Defendants have engaged in unlawful business acts and practices in violation of the UCL, including violations of state and federal laws and regulations, such as 15 U.S.C. § 45(a)(1), 16 C.F.R. § 233.1, California Business & Professions Code sections 17500 and 17501, and California Civil Code sections 1770(a)(9) and 1770(a)(13).

57.     The Federal Trade Commission Act ("FTCA") prohibits "unfair or

-21-

deceptive acts or practices in or affecting commerce[.]" 15 U.S.C. § 45(a)(1). Under FTC regulations, false former pricing schemes similar to the ones employed by Defendants, are deceptive practices that would violate the FTCA:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. ***If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one***; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

16 C.F.R. §§ 233.1(a) (emphasis added).

58.    Further, as detailed below in the Second Claim for Relief, Defendants' conduct also violates California's false advertising laws. Specifically, California Business & Professions Code section 17500 provides, in relevant part, that it is unlawful for any corporation, with intent directly or indirectly to dispose of personal property, to make or disseminate in any "manner or means whatever, including over the Internet, any statement, concerning that . . . personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]" Cal. Bus. & Prof. Code § 17500.

59.    California law also expressly prohibits false former pricing schemes like the one employed by Defendants. California Business & Professions Code section 17501, entitled "Worth or value; statements as to former price," states as follows:

> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code § 17501.

60.    Moreover, as detailed below in the Third Claim for Relief, Defendants' conduct also violates the California Consumer Legal Remedies Act ("CLRA"). *See* Cal. Civ. Code §§ 1750, *et seq*. More specifically, Defendants violated the CLRA's provisions prohibiting businesses from "[a]dvertising goods or services with intent not to sell them as advertised," Cal. Civ. Code § 1770(a)(9), and "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions[.]" Cal. Civ. Code § 1770(a)(13).

**"Unfair" Actions**

61.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

62.    Here, Defendants' actions constitute "unfair" business acts or practices because, as alleged above, Defendants engaged in a misleading and deceptive pricing scheme by advertising and representing false Reference Prices and thereby falsely advertising and representing markdowns or "discounts" that

were false and inflated. Defendants' deceptive marketing practice gave consumers the false impression that its products were regularly sold on the market for a substantially higher price in the recent past than they actually were and thus led to the false impression that Defendants' products were worth more than they actually were. Defendants' acts and practices therefore offended an established public policy, and they engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

63.    The harm to Plaintiff and members of the Class outweighs the utility of Defendants' practices. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the misleading and deceptive conduct described in this Complaint.

**"Fraudulent" Actions**

64.    A business act or practice is "fraudulent" within the meaning of the UCL if members of the public are likely to be deceived.

65.    Here, members of the public are likely to be deceived by Defendants' conduct as alleged above. Among other things, Defendants affirmatively misrepresented the Reference Prices of their products, which thereby misled and deceived customers into believing that they were buying merchandise from Defendants at substantially marked-down and discounted prices. Defendants' deceptive marketing practice gave consumers the false impression that their products were regularly sold on the market for a substantially higher price in the recent past than they actually were and led to the false impression that Defendants' products were worth more than they actually were.

66.    In addition, Defendants had a duty to disclose the truth about their pricing deception, including, among other things, that the Reference Prices advertised and published on their website were not, in fact, prices at which Arhaus's products had sold for in the recent past for a reasonably substantial period of time, but that instead, in reality, Defendants' products rarely (if ever) were

offered at the advertised Reference Prices. Defendants, however, concealed this material information from customers and the general public. Members of the public, therefore, were also likely to be deceived by Defendants' failure to disclose material information.

67.    Because Defendants communicated the same misrepresentation to all class members—that Arhaus products were previously sold at various Reference Prices—the class is entitled to an inference of reliance.  *DZ Reserve v. Meta Platforms, Inc.*, --- F.4th ---, No. 22-15916, 2024 WL 1203886, at *8 (9th Cir. Mar. 21, 2024).

68.    Plaintiff and each member of the Class suffered an injury in fact and lost money or property as a result of Defendants' unlawful, unfair, and/or fraudulent business practices, and as a result of Defendants' unfair, deceptive, untrue or misleading advertising.

69.    Plaintiff, on behalf of herself and the members of the Class, seeks disgorgement of all moneys received by Defendants through the conduct described above.

70.    Plaintiff, on behalf of herself and the members of the Class, seeks a temporary, preliminary, and/or permanent injunction from this Court prohibiting Defendants from engaging in the patterns and practices described herein, including but not limited to, putting a stop to their deceptive advertisements and false Reference Prices in connection with their sale of Arhaus products on their website.

71.    Injunctive relief is necessary to prevent future harm to consumers, including Plaintiff, who would like to purchase the products in the future.  Every day, consumers like Plaintiff are misled into believing they are receiving a discount. Without injunctive relief, Defendants will continue to mislead consumers, and consumers will purchase products they otherwise would not have purchased because they will be unable to determine whether they are actually receiving a discount.

**<u>Second Cause of Action</u>**

**Violation of California's False Advertising Law**

**Cal. Bus. & Prof. Code §§ 17500, *et seq*.**

**(By Plaintiff Against Defendants on Behalf of Herself and the Class)**

72. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

73. The California False Advertising Law, codified at California Business & Professions Code sections 17500, *et seq*. (the "FAL") provides, in relevant part, that it is unlawful for any corporation, with intent directly or indirectly to dispose of personal property, to make or disseminate in any "manner or means whatever, including over the Internet, any statement, concerning that . . . personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]" Cal. Bus. & Prof. Code § 17500.

74. Similarly, the FAL provides, in relevant part, that "no price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement." Cal Bus. & Prof. Code § 17501.

75. Here, Defendants routinely disseminated on their website false Reference Prices for the products offered for sale on their website, including to Plaintiff. Such statements of Defendants were untrue, or at the very least, were misleading. Among other things, Defendants rarely, if ever, offered Arhaus's products on their website at the Reference Prices displayed in connection with their products. Further, Defendants rarely, if ever, offered Arhaus's products on their website at the Reference Prices within the three months immediately preceding the publication of the Reference Prices. Defendants therefore misled customers,

-26-

including Plaintiff, into believing that the Reference Prices are, or were, genuine former prices and that the "sale" prices relative to the published Reference Prices, in fact, reflected real and substantial discounts. Defendants' deceptive marketing practice gave consumers the false impression that their products were regularly sold for a substantially higher price in the recent past than they actually were and thus led to the false impression that Defendants' products were worth more than they actually were.

76.    Defendants engaged in this deceptive conduct with the intent to dispose of personal property—namely, with the intent to increase sales of Arhaus's products offered by Defendants on their website and retail locations.

77.    Defendants knew, or by the exercise of reasonable care should have known, that their dissemination of Reference Prices for Arhaus products sold on their website was untrue and/or misleading. Among other things, Defendants represented the Reference Prices in connection with Arhaus products sold on their website even though they knew, or in the exercise of reasonable care should have known, that such products had rarely, if ever, sold at the crossed-out Reference Prices.

78.    As a direct and proximate result of Defendants' misleading and false advertisements, Plaintiff and members of the Class have suffered injury in fact and have lost money. As such, Plaintiff requests that this Court order Defendants to restore this money to Plaintiff and all members of the Class, and to enjoin Defendants from continuing their false and misleading advertising practices in violation of California law in the future. Otherwise, Plaintiff, members of the Class, and the broader general public will be irreparably harmed and/or denied an effective and complete remedy.

### Third Cause of Action

**Violation of the California Consumer Legal Remedies Act,**

**Cal. Civ. Code §§ 1750, *et seq.***

1

**(By Plaintiff Against Defendants on Behalf of Herself and the Class)**

2

79.     Plaintiff repeats and re-alleges the allegations contained in every

3

preceding paragraph as if fully set forth herein.

4

80.     The Consumer Legal Remedies Act of 1970, Cal. Civ. Code §§ 1750,

5

*et seq*. (the "CLRA") is a California consumer protection statute which allows

6

plaintiffs to bring private civil actions for "unfair methods of competition and

7

unfair or deceptive acts or practices undertaken by any person in a transaction . . .

8

which results in the sale or lease of goods or services to any consumer." Cal. Civ.

9

Code § 1770(a). The purposes of the CLRA are "to protect consumers against

10

unfair and deceptive business practices and to provide efficient and economical

11

procedures to secure such protection." Cal. Civ. Code § 1760.

12

81.     Plaintiff and each member of the Class are "consumers" as defined by

13

California Civil Code section 1761(d). Defendants' sale of Arhaus products on

14

their website to Plaintiff and the Class were "transactions" within the meaning of

15

California Civil Code section 1761(e). The products purchased by Plaintiff and the

16

Class are "goods" within the meaning of California Civil Code section 1761(a).

17

82.     Defendants violated and continue to violate the CLRA by engaging in

18

the following practices prohibited by California Civil Code section 1770(a) in

19

transactions with Plaintiff and the Class which were intended to result in, and did

20

result in, the sale of Arhaus-branded products:

21

(1) Advertising goods or services with the intent not to sell them as

22

advertised; and

23

(2) Making false or misleading statements of fact concerning

24

reasons for, the existence of, or amounts of price reductions.

25

Cal. Civ. Code §§ 1770(a)(9) & (13).

26

83.     With regards to section 1770(a)(9), Defendants advertised and

27

represented their branded products on their website with the "intent not to sell"

28

them as advertised because, among other things the false Reference Prices

advertised in connection with products offered on their website misled and continue to mislead customers into believing the merchandise was previously offered for sale and/or sold at the higher Reference Prices for some reasonably substantial period of time.

84.     With regards to section 1770(a)(13), Defendants made false or misleading statements of fact concerning the "existence of" and the "amounts of price reductions" because, among other things no true price reductions existed—or at the very least, any price reductions were exaggerated—in that Defendants' products were rarely, if ever, previously offered for sale and/or sold at the higher Reference Prices for a reasonably substantial period of time.

85.     As to this cause of action, at this time, Plaintiff seeks only injunctive relief at this time. Pursuant to Cal. Civ. Code § 1782, in conjunction with the filing of this action, Plaintiff's counsel is notifying Defendants by separate letter of the particular violations of the CLRA and demanding that it correct or agree to correct the actions described in this Complaint. If Defendants fail to do so, Plaintiff shall amend her Complaint as of right (or otherwise seek leave to amend the Complaint) to include compensatory and monetary damages to which Plaintiff and the Class is entitled.

**Fourth Cause of Action**

**Fraudulent Concealment**

**(By Plaintiff Against Defendants on Behalf of Herself and the Class)**

86.     Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

87.     Defendants uniformly disclosed some facts to Plaintiff and all members of the Class during the Class Period in connection with their products, and other items on their website. Namely, Defendants disclosed a Reference Price for each item by displaying on the product description page for each product a Reference Price substantially higher than the offered selling price, which is marked

down or discounted from the Reference Price by a significant discount.

88. Defendants, however, intentionally failed to disclose other facts, making Defendants' disclosure deceptive. Specifically, Defendants failed to disclose that Defendants rarely, if ever, previously offered for sale and/or sold their products at the higher Reference Price for any reasonably substantial period of time. As a result, Defendants deceived Plaintiff and the Class into believing that they were purchasing items at a substantial markdown or discount when, in reality, the false Reference Price and discounting practice artificially inflated the true market value of the items they purchased.

89. As a separate basis for concealment, Defendants uniformly and intentionally concealed from Plaintiff and all members of the Class that the items they purchased from Defendants had rarely, if ever, been sold by Defendants in the recent past at the substantially higher Reference Price displayed on Defendants' website and/or in the prevailing market. These were facts known only to Defendants that Plaintiff and the Class could not have discovered.

90. Plaintiff and the Class did not know of the concealed facts.

91. Defendants intended to deceive Plaintiff and the Class by concealing the facts described above.

92. Had the omitted information been disclosed, Plaintiff reasonably would have behaved differently. Among other things, Plaintiff would not have purchased the items she purchased from Defendants, or, at the very least, she would not have paid as much for the items as he ultimately did.

93. The omitted information was material and thus, reliance is presumed on a class-wide basis. *Davis-Miller v. Auto. Club of S. Cal.*, 201 Cal.App.4th 106, 122 (2011). The omitted information related to the price of the items sold on Defendants' website and whether Plaintiff was receiving a true and genuine substantial discount or whether, instead, Plaintiff was being deceived into buying products through a pricing scheme utilizing fake, artificially inflated former prices.

1  A reasonable person would plainly attach importance to matters affecting pricing
2  in determining his or her purchasing decision.

3  94.   As a direct and proximate result of the above, Plaintiff and the Class
4  have been harmed and suffered damages in an amount to be proven at trial.

5  95.   Defendants undertook these illegal acts intentionally or with
6  conscious disregard of the rights of Plaintiff and the Class, and did so with fraud,
7  malice, and/or oppression. Based on the allegations above, Defendants' actions
8  constituted fraud because Defendants intended to and did deceive and injure
9  Plaintiff and the Class. Based on the allegations above, Defendants' actions
10  constituted malice because Defendants acted with the intent to and did cause injury
11  to Plaintiff and the Class, and also because Defendants' deceptive conduct was
12  despicable and was done with a willful and knowing disregard of the rights of
13  Plaintiff and the Class. Based on the allegations above, Defendants' actions
14  constituted oppression because Defendants' deceptive conduct was despicable and
15  subjected Plaintiff and the Class to cruel and unjust hardship in knowing disregard
16  of their rights.

## PRAYER FOR RELIEF

18  WHEREFORE, Plaintiff Mariah Moses prays for relief and judgment in
19  favor of herself and the Classes as follows:

## On the First Cause of Action for Violations of the Unfair Competition Law
### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

22  A.   For an order certifying that the action be maintained as a class action,
23  that Plaintiff be designated the class representative, and that undersigned counsel
24  be designated as class counsel.

25  B.   For an award of equitable and declaratory relief.

26  C.   For pre- and post-judgment interest and costs of suit incurred herein.

27  D.   For attorneys' fees incurred herein pursuant to California Code of
28  Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

CLASS ACTION COMPLAINT

E.   For such other and further relief as the Court may deem just and proper.

**On the Second Cause of Action for Violations of the False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)**

A.   For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

B.   For an injunction putting a stop to the deceptive and misleading conduct described herein and ordering Defendants to correct their deceptive and misleading advertising and pricing practices.

C.   For an award of restitution and disgorgement of moneys paid that Defendants obtained as a result of their unfair, deceptive, untrue, and misleading advertising, all as described above.

D.   For an award of equitable and declaratory relief.

E.   For pre- and post-judgment interest and costs of suit incurred herein.

F.   For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

G.   For such other and further relief as the Court may deem just and proper.

**On the Third Cause of Action for Violations of the Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*)**

A.   For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

B.   For an injunction putting a stop to the deceptive and misleading conduct described herein and ordering Defendants to correct their deceptive and misleading advertising and pricing practices.

C.   For pre- and post-judgment interest and costs of suit incurred herein.

CLASS ACTION COMPLAINT

D.     For attorneys' fees incurred herein pursuant to California Civil Code section 1780, or to the extent otherwise permitted by law.

E.     For such other and further relief as the Court may deem just and proper.

**On the Fourth Cause of Action for Fraudulent Concealment**

A.     For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

B.     For compensatory damages in an amount to be proven at trial.

C.     For pre- and post-judgment interest and costs of suit incurred herein.

D.     For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

E.     For such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of herself and the Class, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

DATED:  April 2, 2024                     Respectfully submitted,

                                          **KJC LAW GROUP, A.P.C.**

                                          By: */s/ Kevin J. Cole*

                                          Attorney for Plaintiff
                                          *Mariah Moses*

-33-

CLASS ACTION COMPLAINT