1  **KJC LAW GROUP, A.P.C.**
2  Kevin J. Cole (SBN 321555)
   kevin@kjclawgroup.com
3  Christopher Ramos (SBN 301556)
   ramosc@kjclawgroup.com
4  W. Blair Castle (SBN 354085)
   blair@kjclawgroup.com
5  9701 Wilshire Blvd., Suite 1000
   Beverly Hills, CA 90212
6  Telephone: (310) 861-7797
7
8  *Attorneys for Plaintiff and the Proposed*
9  *Class*

10              **UNITED STATES DISTRICT COURT**
11              **CENTRAL DISTRICT OF CALIFORNIA**
12

13  MARIAH MOSES, individually and          CASE NO. 8:24-cv-00728-FMO-ADS
14  on behalf of all others similarly
    situated,                               <u>**CLASS ACTION**</u>
15
                                            **NOTICE OF AND UNOPPOSED**
16            Plaintiff,                     **RENEWED MOTION FOR CLASS**
                                            **CERTIFICATION AND**
17       v.                                 **PRELIMINARY APPROVAL OF**
                                            **SETTLEMENT AGREEMENT**
18
19  ARHAUS, INC., a Delaware                *Before the Hon. Fernando M. Olguin*
    corporation; and DOES 1 to 10,
20  inclusive,                              Hearing Date: July 3, 2025
21                                          Hearing Time: 10:00 am
            Defendants.                     Hearing Location: Courtroom 6D
22
23
24
25
26
27
28
    _____
    RENEWED MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF SETTLEMENT
                                    AGREEMENT

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 3, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Fernando M. Olguin, United States District Court, Central District of California, Western Division, 350 W. 1st Street, 6th Floor, Courtroom 6D, Los Angeles, CA 90012, Plaintiff Mariah Moses ("Plaintiff") will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for the entry of an Order:

1.      Preliminarily approving the Settlement Agreement[1] between Plaintiff and Defendant Arhaus, Inc.;

2.      Approving the form, manner, and content of the notice for the proposed settlement to the Settlement Class;

3.      Appointing ILYM Group Inc. as the Settlement Administrator;

4.      Conditionally certifying the Settlement Class;

5.      Appointing Plaintiff as the Class Representative;

6.      Appointing Kevin J. Cole as Class Counsel on behalf of his firm; and,

7.      Setting a Final Approval Hearing date and briefing schedule for final approval of the Settlement and consideration of Plaintiff's fee application.

The grounds for this Motion are that the proposed settlement is within the necessary range of reasonableness to justify granting preliminary approval pursuant to Rule 23(e), and that the case satisfies all the conditions to be certified as a class. This Renewed Motion is based upon this Notice of Motion for Class Certification and Preliminary Approval of Settlement Agreement, the Memorandum of Points and Authorities, the Declarations of Kevin J. Cole, Mariah Moses, and Lisa Mullins (a

---

[1] Unless indicated otherwise, all capitalized terms shall have the meaning agreed to by the Parties in the Settlement Agreement ("SA"), which is attached as Exhibit 1 to the Declaration of Kevin J. Cole.

1  representative of the Settlement Administrator) filed herewith, the pleading and

2  papers on file in this action, and such oral argument and documentary evidence as

3  may be presented at the hearing on this Motion.

4

5  Dated:        May 27, 2025                    Respectfully submitted,

6
                                                /s/ Kevin J. Cole
7                                               **KJC LAW GROUP, A.P.C.**
8                                               Kevin J. Cole (SBN 321555)
                                                kevin@kjclawgroup.com
9                                               Christopher Ramos (SBN 301556)
                                                ramosc@kjclawgroup.com
10                                              W. Blair Castle (SBN 354085)
11                                              blair@kjclawgroup.com
                                                9701 Wilshire Blvd., Suite 1000
12                                              Beverly Hills, CA 90212
13                                              Telephone: (310) 861-7797

14                                              *Counsel for Plaintiff and the Proposed Class*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................. 1

II.    BACKGROUND ................................................................................. 1

       A.    Facts .................................................................................... 1

       B.    Procedural History ............................................................. 2

III.   JURISDICTION ................................................................................ 4

IV.    THE SETTLEMENT AGREEMENT ............................................... 4

       A.    The Settlement Class ......................................................... 4

       B.    Settlement Consideration .................................................. 5

       C.    Settlement Administrator and Administration Costs ........ 6

       D.    The Notice Program .......................................................... 7

       E.    Opt-Out and Objection Procedures .................................. 8

       F.    Release of Claims ............................................................. 9

       G.    Attorneys' Fees and Costs and Service Award ................ 9

V.     ARGUMENT .................................................................................. 10

       A.    The Settlement Class Should be Certified ...................... 10

             1.   The Settlement Class Meets the Requirements of Rule 23(a). .......................................................... 10

             2.   The Settlement Class Meets the Predominance and Superiority Requirements of Rule 23(b)(3) ........ 12

       B.    The Proposed Settlement Should be Preliminarily Approved ............... 14

             1.   Legal Standard for Preliminary Approval ............ 14

             2.   The Court Should Direct Notice Under Rule 23(e)(1). ............... 15

             3.   The Settlement is Fair, Reasonable, and Adequate ............... 15

                  (a)   Class Representative Moses and Class Counsel Adequately Represented the Class (Rule 23(e)(2)(A)) .......................... 15

                  (b)   The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B)) ................... 16

                  (c)   The Costs, Risks, and Delay of Trial and Appeal

(Rule 23(e)(2)(C)(i))...............................................................17

   (d) The Effectiveness of Any Proposed Method of Distributing Relief to the Settlement Class (Rule 23(e)(2)(C)(ii))...............................................19

   (e) The Terms of the Proposed Award of Attorneys' Fees (Rule 23(e)(2)(C)(iii)).....................................20

   (f) There Are No Additional Agreements (Rule 23(e)(2)(C)(iv)).........................................................21

   (g) The Settlement Treats Settlement Class Members Equitably (Rule 23(e)(2)(D)).....................................22

  4. Additional *Churchill* Factors Favor Final Approval..................22

   (a) The Amount Offered in the Settlement...............................22

   (b) The Views of Class Counsel ...........................................24

  5. Notice Will be Provided Under CAFA. ...........................................25

 C. The Court Should Appoint the Settlement Administrator.......................25

 D. The Court Should Schedule a Final Approval Hearing. ..........................25

VI. CONCLUSION...............................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-05248-MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) ...............................................................17

*Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015) ...............................................................21

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ...............................................10, 13

*Anderson v. Sherwin-Williams Co.*, No. ED-CV-172459-FMO-SHKX, 2020 WL 7051099 (C.D. Cal. May 12, 2020)...............................................................17

*Brazil v. Dell, Inc.*, No. C-07-01700 RMW, 2010 WL 5387831 (N.D. Cal. Dec. 21, 2010) ...............................................................12, 13

*Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021)...............................................................21

*Calderon v. Wolf Firm*, No. SACV 16-1622-JLS(KESx), 2018 WL 6843723 (C.D.

Cal. Mar. 13, 2018) ................................................................................24

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020) .........................14

*Chester v. TJX Cos.*, No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788 (C.D. Cal.
Dec. 5, 2017) ........................................................................................18

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)..................... 14, 22

*Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) ..............................6

*Dennis v. Kellogg Co.*, No. 09-cv-1786-L(WMc), 2013 WL 6055326 (S.D. Cal.
Nov. 14, 2013)........................................................................................18

*Hillman v. Lexicon Consulting*, No. ED-CV-16-01186-VAP(SPx), 2017 WL
10433869 (C.D. Cal. Apr. 27, 2017)........................................................19

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) .......................14

*Johnson v. Moss Bros. Auto Grp.*, No. ED-CV-192456-FMO-SPX, 2021 WL
4556052 (C.D. Cal. June 25, 2021)...................................................... 12, 13

*Just Film, Inc. v. Buono*, 847 F.3d 1108 (9th Cir. 2017) .......................... 11, 13

*Khan v. Boohoo.com USA, Inc., et al.*, No. 2:20-cv-03332-GW-JEM, ECF No. 203
(C.D. Cal.)...............................................................................................18

*Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136 (9th Cir. 2013) ....................4

*Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*, No. 19-cv-07087-DMR, 2021
WL 1788447 (N.D. Cal. May 5, 2021)........................................................15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004)
..................................................................................................................25

*Norton v. LVNV Funding, LLC*, No. 18-cv-05051-DMR, 2021 WL 3129568 (N.D.
Cal. July 23, 2021) ...................................................................................15

*Odom v. ECA Mktg., Inc.*, No. ED-CV-20851-JGB-SHKX, 2021 WL 4803488 (C.D.
Cal. May 27, 2021)...................................................................................10

*Perks v. Activehours, Inc.*, No. 5:19-cv-05543-BLF, 2021 WL 1146038 (N.D. Cal.
Mar. 25, 2021)..........................................................................................15

*Rannis v. Recchia*, 380 F. App'x 646 (9th Cir. 2010).....................................10

*Schaffer v. Litton Loan Servicing, LP*, No. CV 05–07673 MMM (JCx), 2012 WL
    10274679 (C.D. Cal. Nov. 13, 2012)................................................................20

*Spann v. J.C. Penney Corp.*, 307 F.R.D. 508 (C.D. Cal. 2015) ...................... 11, 13, 17

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)......................................................10

*Wong v. Arlo Techs., Inc.*, No. 5:19-cv-00372-BLF, 2021 WL 1531171 (N.D. Cal.
    Apr. 19, 2021) ......................................................................................... 22, 25

**Statutes**

28 U.S.C. § 1715(b) ...........................................................................................25

28 U.S.C. §1332(d) .............................................................................................4

**Rules**

Fed. R. Civ. P. 23(a) ..............................................................................10, 11, 15

Fed. R. Civ. P. 23(b) ..............................................................................12, 15, 19

Fed. R. Civ. P. 23(c) .........................................................................................19

Fed. R. Civ. P. 23(e) ...................................................................................passim

## I.    INTRODUCTION

Plaintiff Mariah Moses, on behalf of herself and all other persons similarly situated, ("Moses" or "Plaintiff"), with the consent of Defendant Arhaus, Inc. ("Arhaus" or "Defendant"), respectfully requests entry of an order (1) conditionally certifying of the Settlement Class; (2) preliminarily approving the Settlement as set forth in the Settlement Agreement; (3) appointing Class Counsel; (4) appointing Moses as Class Representative; (5) providing for issuance of Notice to the Settlement Class; and (6) scheduling a date for the Final Approval Hearing.

Moses's claims arise from a purchase she made through Arhaus's website in March 2024, where Arhaus represented, by including a higher reference price next to a sale price, that the item was on sale. Arhaus, however, had not sold the item at the higher reference price within the prior 90 days such that advertised discount was false. Plaintiff contends that Arhaus utilized similar reference prices on nearly every item sold through its website.

The Settlement is the result of arm's-length negotiations, conducted with the assistance of the Honorable Jay Ghandi (ret.) as mediator. The Settlement provides substantial and meaningful relief to the Settlement Class. It largely follows the structure of a false reference pricing settlement that this Court previously approved: *Spann v. J.C. Penny Corporation Inc.,* Case No. 8:12-cv-00215 (C.D. Cal.). If approved, the Settlement will create a $6,000,000 Class Settlement Amount and will resolve all claims that Moses and the Settlement Class have against Arhaus arising from its alleged reference pricing practices. As discussed below, the Settlement is fair and ripe for preliminary approval.

## II.    BACKGROUND

### A.    Facts

Arhaus is a manufacturer and retailer of high-end furniture, home décor, and other products. ECF No. 18, ¶ 15. Arhaus markets and sells its products to California consumers through both online sales and in retail stores, although this lawsuit

1  concerns only those sales made to California consumers through Arhaus's website.

2  *Id*. at ¶ 41.

3      During the Settlement Class Period, all or nearly all of Arhaus's products sold

4  on its website were advertised as being marked down from a higher former price (the

5  "Reference Price"), which was prominently displayed to the customer as the supposed

6  original price. *Id*. Plaintiff contends that almost universally, however, Arhaus had not

7  sold its items at the Reference Price within the previous 90 days, if at all. *Id*. at ¶ 18.

8      On or about March 20, 2024, Plaintiff visited Arhaus's website to shop for

9  home décor. *Id*. at ¶ 23. Plaintiff visited the site from her home in Orange County,

10  California, where she browsed the site and observed that nearly every item offered

11  had a Reference Price that was crossed out with a sale price next to it. *Id*. She found

12  Arhaus's "Paraiso 3-Tier Lantern in Black" and added it to her shopping cart. *Id*. The

13  price of the lantern was listed as $34.00 with a strike-through reference price of

14  $139.00. *Id*. The lantern was allegedly being offered at over a 75% discount. Plaintiff

15  relied on Arhaus's representation that the lantern was temporarily on sale and was

16  being sold at a substantial markdown, inducing her to purchase the lantern. Plaintiff

17  paid $34.00 for the lantern. *Id*. at ¶ 25. However, Arhaus had not sold the Paraiso 3-

18  Tier Lantern in Black at the Reference Price of $139.00 within the previous 90 days.

19  *Id*. at ¶ 28.

20      **B.    Procedural History**

21      On April 2, 2024, Plaintiff filed her Class Action Complaint (ECF No. 1)

22  against Arhaus on behalf of a nationwide class and California subclass of individuals

23  who purchased any item from Arhaus's website that contained a false markdown.

24  ECF No. 1. Before filing the Complaint, Class Counsel investigated the potential

25  claims against Arhaus, and gathered information about the unfair and deceptive sales

26  practices and their potential impact on consumers. *See* Cole Decl. ¶ 8.

27      On June 3, 2024, Plaintiff filed her First Amended Complaint ("FAC").  ECF

28  No. 18. The operative FAC alleges that Arhaus violated California's Unfair

Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, California's False
Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*, and the California
Consumer Legal Remedies Act ("CLRA"), Cal Civ. Code § 1750 *et seq.* Specifically,
the FAC alleged that Arhaus falsely advertised the price of its products as being
deeply discounted. The FAC also sought to certify a California class of consumers
who purchased any item from Arhaus's website that contained a false markdown. *Id.*
¶ 41.  On June 24, 2024, Arhaus filed its Answer to the First Amended Complaint.
ECF No. 19.

On July 2, 2024, Moses propounded her initial set of discovery requests, which
included requests for production and interrogatories. *See* Cole Decl. ¶ 9. Arhaus
responded to the initial set of requests on August 22, 2024. *Id*. Arhaus's responses to
Plaintiff's initial requests included information regarding the total number of
California consumers included in the proposed class and the total value of sales made
by California consumers through Arhaus's website. *Id*.

The Parties engaged in mediation on September 6, 2024, with the Honorable
Jay C. Gandhi (Ret.), a former magistrate judge in the Central District of California.
*Id*. at ¶ 10. With both Parties aware of the number of potential class members and the
value of sales made through Arhaus's website, the Parties exchanged written
mediation briefs setting forth their respective views of the case. *Id*. Mediation
significantly aligned the Parties' views of the case. *Id*. at ¶ 11.

In the days following the mediation, the parties continued to negotiate and
ultimately reached preliminary resolution on September 18, 2024. *Id*. Following that,
counsel continued to engage in settlement discussions to finalize the details of the
Settlement. *Id.* at ¶ 12. Indeed, the Parties have spent significant time negotiating the
structure, specific terms, and language of the Settlement Agreement. *Id*.

On November 7, 2024, the Parties filed a Notice of Settlement, advising the
Court of the agreement. ECF No. 26.  On February 10, 2025, the Parties executed the
original Settlement Agreement (the "SA"). Cole Decl. ¶ 13.

Plaintiff moved for preliminary approval of the Settlement on February 11, 2025. ECF No. 33. A preliminary approval hearing was held before the Court on April 24, 2025, where the Court identified a number of discreet issues which the Court requested the Parties address through an amended settlement agreement. ECF No. 38. The Parties now submit the First Amended Settlement Agreement for preliminary approval.

## III.    JURISDICTION

This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d). "Federal jurisdiction under CAFA has three elements: (1) there must be minimal diversity of citizenship between the parties, (2) the proposed class must have at least 100 members and (3) the amount in controversy must 'exceed[ ] the sum or value of $5,000,000.'" *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1139 (9th Cir. 2013) (quoting 28 U.S.C. § 1332(d)(2)). Each of these elements is satisfied. Minimal diversity exists because Moses is a citizen of California and Arhaus is a Delaware corporation with its principal place of business in Ohio. ECF No. 18 at ¶¶ 7–8. The Settlement Class contains over 38,000 members. The value of the case—as evidenced by the Settlement Agreement—is greater than $5,000,000.

## IV.    THE SETTLEMENT AGREEMENT

### A.    The Settlement Class

The SA contemplates certification of the following Settlement Class for settlement purposes only:

All persons in the State of California who purchased one or more of Arhaus's products from Arhaus's website between April 2, 2020, through September 18, 2024 (the "Settlement Class Period") and where the purchased product(s) listed both a current sale price and also referenced a second, higher price (with or without a "strike" through it).

*See* SA ¶ 2.1.30. The Settlement Class consists of approximately 38,383 individuals

who purchased a product from Arhaus's website during the Settlement Class Period
that contained a Reference Price. Cole Decl. ¶ 14. The Settlement Class excludes any
and all past or present officers, directors, or employees of Arhaus, any judge who
presides over this action, and any partner or employee of Class Counsel. *See* SA ¶
2.1.30.

### B. Settlement Consideration

The Settlement Agreement provides for a Class Settlement Amount of
$6,000,000, which is comprised of both a Cash Component and a Net Settlement
Amount. SA ¶¶ 2.1.19, 4.6. The Cash Component will be paid in cash and will be
deducted from the Class Settlement Amount prior to any distribution of the Net
Settlement Amount. *Id*. at ¶¶ 4.6.1, 4.6.3. The Cash Component is comprised of: (1)
Reasonable Attorneys' Fees and Costs; (2) a Service Award; and (3) Notice and
Administration Costs. *Id*. at ¶¶ 4.6.1.

After payment of the Cash Component, the Net Settlement Amount will be
distributed to the Settlement Class Members. *Id*. at ¶¶ 2.1.32, 4.6.3. Each Claimant
will receive a pro rata share (the "Settlement Share") of the Net Settlement Amount,
based on the Claimant's total purchase amount divided by the total aggregate purchase
amount of all Settlement Class Members. *Id*. at ¶ 4.6.3.1. Settlement Share payments
will be made, at Claimant's election, in cash or Store Credit of equal value. *Id*.
Settlement Share payments will be capped at 50% of the Claimant's qualifying
purchase amount. *Id.*

To receive a Settlement Share, each Claimant must submit a Claim Form to the
Settlement Administrator by mail or through the Settlement Website. *Id*. at ¶ 4.6.4.
Arhaus will supply the contact information for the known Settlement Class Members,
as well as the relevant sales and transaction data to the Settlement Administrator, who
will verify and administer the claims. *Id*. at ¶¶ 4.4, 4.6.3.2. Claim Forms must be
submitted within the Claims Period, which ends 45 days after the Notice Deadline
(which is 60 days after Preliminary Approval). *Id*. ¶¶ 4.2.1, 4.6.5.

Settlement Share distributions in the form of elected cash payments will be made by the Settlement Administrator within 30 days after the Effective Date (as described in SA ¶ 2.1.14) and will be paid by mailed check. *Id.* ¶ 4.6.7.2. All checks for Settlement Awards will be valid for 120 days from the date on the check. *Id*. Claimants who elected to receive their Settlement Share in the form of Store Credit will receive a Store Credit gift card, which will be mailed to the Claimant by the Settlement Administrator. *Id*. at ¶ 4.6.7.1. For the Store Credit gift cards to be used, the Claimant must call the Client Services number listed on the Settlement Website. *Id*. at ¶ 2.1.34. For returned mail, the Settlement Administrator will attempt one skip-tracing and one re-mailing. *Id.* ¶¶ 4.6.7.1–2.

Any undeliverable Store Credit gift cards or remaining monies from uncashed Settlement Share checks from the Net Settlement Amount will be donated to the National Consumer Law Center as a *Cy Pres* Distribution, subject to the approval of the Court. *Id*. No monies out of the Net Settlement Amount will revert back to Arhaus. *Id*. The National Consumer Law Center's mission is aligned with the interests of the Settlement Class in that the National Consumer Law Center's mission is to "fight every day to level the economic playing field for consumers, focusing on the needs of the most vulnerable people, families, and communities."[2] *See Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) ("To ensure that the settlement retains some connection to the plaintiff class and the underlying claims, however, a *cy pres* award must qualify as 'the next best distribution' to giving the funds directly to class members.") (citation omitted). The Parties and their counsel do not have an affiliation with the National Consumer Law Center.

**C.    Settlement Administrator and Administration Costs**

Subject to Court approval, the Settlement Administrator is ILYM Group, Inc. ("ILYM Group"), a class-action administration firm with experience in disseminating

---

[2] *See* National Consumer Law Center, https://www.nclc.org/about-us/.

1    class action notices and administering class action settlements ranging in size from 26

2    to 4.5 million class members. *See* Declaration of Lisa Mullins ("ILYM Group Decl."),

3    ¶ 2. ILYM Group will: (a) establish and maintain the Settlement Account; (b)

4    establish and maintain a Settlement Website with detailed information about the

5    Settlement, access to relevant Court documents, and the ability for class members to

6    submit electronic claims and exclusion requests; (c) establish and maintain a toll-free

7    telephone number that members of the settlement class may call to receive more

8    information about the Settlement; (d) conduct address traces to locate class member

9    addresses as necessary; (e) provide notice of the proposed settlement via direct mail,

10   e-mail, and text message; (f) receive, process and validate claims and exclusion forms;

11   (g) handle inquiries from class members; (h) calculate the settlement shares for each

12   claimant and distribute the settlement funds in accordance with the terms of the

13   Settlement Agreement and the Court's Final Approval Order; and (i) perform any

14   additional duties as directed by the Parties and/or the Court. *Id*. at ¶ 3. The Notice and

15   Administration Costs are estimated at $159,780 and are capped under the Settlement

16   Agreement at $200,000. *Id*. at ¶ 10; *see also* SA ¶ 4.6.1.3.

17       **D.    The Notice Program**

18       Notice will be disseminated directly to the Settlement Class within 60 days after

19   entry of the Preliminary Approval Order (i.e., the Notice Deadline). Notice will be

20   given by (1) direct mail via postcard notice; (2) e-mail; and (3) text message. SA ¶¶

21   4.5, 4.5.1–4.5.3. To effectuate the Notice Program, Arhaus will provide the Settlement

22   Administrator with contact information, including the name, last known address,

23   telephone number, and email address, for each member of the Settlement Class within

24   14 days of entry of the Preliminary Approval Order. *Id*. at ¶ 4.4.

25       The Settlement Administrator will establish a dedicated Settlement Website to

26   provide comprehensive information about the Settlement, such as the Settlement

27   Agreement; contact information for Class Counsel, Arhaus's Counsel, and the

28   Settlement Administrator; the motions for preliminary approval, final approval and

for attorneys' fees and expenses (when available); the preliminary approval order; and a downloadable and online version of the Claim Forms and Exclusion Request Form, as well as the forms of Notice. *Id*. at ¶ 4.5.4. Additionally, the Settlement Administrator will establish and maintain a toll-free telephone number that persons in the Settlement Class may call to receive more information regarding the Settlement. *Id*. at ¶ 4.5.5.

### E.  <u>Opt-Out and Objection Procedures</u>

The Notice Program will advise the Settlement Class of their right to opt out of the Settlement or to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs, and expenses and/or Service Award to the Class Representative, and of the associated deadlines to opt out or object. *See id.* at ¶ 4.8, *et seq.*

Persons in the Settlement Class who wish to exclude themselves from the Settlement must do so by either mailing the Exclusion Request Form to the Settlement Administrator or by submitting the Exclusion Request Form through the Settlement Website prior to Opt-Out and Objection Deadline (which is 45 days after the Notice Deadline). *Id*. at ¶ 4.8.1. The Exclusion Request Form must: (a) be signed by the person who requests exclusion; (b) include the full name and address of the person requesting exclusion; and (c) certify the following statement: "I/we request to be excluded from the settlement in the *Moses* action." *Id*. An Exclusion Request form shall be available for download from the Settlement Website or made available by the Settlement Administrator by main upon request. *Id*. *Id.* A Settlement Class Member who submits a valid Exclusion Request Form is not eligible to recover a Settlement Share. *Id*.

Settlement Class Members who wish to object to the Settlement must file the objection with the Court by the Opt-Out and Objection Deadline. *Id.* ¶ 4.9.2. The written Objection must include (a) documents establishing, or provide information sufficient to allow the Parties to confirm, that the objector is a person within the Settlement Class, including records of any applicable purchase from Arhaus; (b)

include a statement of the specific objection(s); and (c) state the grounds for objection, as well as identify any documents that such objector desires the Court to consider. *Id.* Subject to Court approval, any objecting Settlement Class Member wishing to appear at the Final Approval Hearing, in person or through counsel, must file with the Court and serve on all Parties a Notice of Intention to Appear. *Id.* Following the Court's ruling on objections, any person in the Settlement Class who submitted an objection must submit a Claim Form no later than 21 days after Final Approval of the Settlement to make a claim for a Settlement Share. *Id.* at ¶ 4.9.3.

### F.    Release of Claims

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be bound by the terms of the Settlement, including the release of all claims and causes of action pleaded or that could have been pleaded that are related in any way to Arhaus's unfair or deceptive trade practice of falsely marking down products on its website during the Class Period. *See id.* ¶¶ 4.7; 4.7.1.2. The release does not extend to claims the Settlement Class Members do not know or suspect to exist in their favor at the time of executing the release and that, if known to them, would have materially affected their settlement with Arhaus. *See* Cal. Civ. Code § 1542.

### G.    Attorneys' Fees and Costs and Service Award

The Settlement Agreement contemplates Class Counsel petitioning the Court for attorneys' fees and litigation costs no later than 30 days prior to the Opt-Out and Objection Deadline. SA ¶ 4.6.1.1. Class Counsel intends to seek a fee award not to exceed 25% of the Class Settlement Amount. *Id.* Class Counsel will also seek to recover litigation costs (up to $50,000[3]). *Id.*

Additionally, Class Counsel will petition the Court for a Service Award of $5,000 to Moses as compensation for her service, time and effort on behalf of the

---

[3] This amount does not include the Settlement Administrator's costs.

Settlement Class, to be deducted from the Class Settlement Amount as part of the Cash Component. *Id.* at ¶ 4.6.1.2; *see also* Declaration of Mariah Moses ("Moses Decl.") ¶¶ 4-5. Arhaus has agreed not to oppose the Service Award for Moses. SA ¶ 4.6.1.2. Neither final approval, nor the size of the Class Settlement Amount, are contingent upon approval of the Service Award, Notice and Administration Costs, and/or attorneys' fees. SA ¶¶ 4.6.1.1–2.

## V.    ARGUMENT

### A.    The Settlement Class Should be Certified.

#### 1.    The Settlement Class Meets the Requirements of Rule 23(a).

Before assessing the Parties' Settlement, the Court should first confirm that the underlying Settlement Class meets the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … [b]ut other specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context."). Here, each of the prerequisites for class certification under Rule 23(a) are satisfied.

**Numerosity.** The Settlement Class, which is comprised of approximately 38,383 members, satisfies the numerosity requirement. Cole Decl. ¶ 11; *see also Rannis v. Recchia*, 380 F. App'x 646, 650–51 (9th Cir. 2010) (finding that class of 20 satisfies numerosity and noting that generally, "courts find the numerosity requirement satisfied when a class includes at least 40 members.").

**Commonality.** The Settlement Class also satisfies the commonality requirement, which requires that claims of the Settlement Class "depend upon a common contention …  capable of classwide resolution—which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Odom v. ECA Mktg., Inc.*, No. ED-CV-20851-JGB-

1  SHKX, 2021 WL 4803488, at *2 (C.D. Cal. May 27, 2021) (quoting *Wal-Mart Stores,*
2  *Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

3      Here, the claims of the Settlement Class turn on whether Arhaus engaged in
4  false or deceptive sales practices by representing that items were on sale when the
5  items had not recently (if ever) been sold at the Reference Price. Thus, common
6  questions include, *inter alia*, whether Arhaus advertised false Reference Prices on
7  products offered on its website; whether Arhaus advertised price discounts from false
8  Reference Prices on products offered on its website; whether the products listed on
9  Arhaus's website were offered at their Reference Prices for any reasonably substantial
10 period of time prior to being offered at prices that were discounted from their
11 Reference Prices, and whether injunctive relief is appropriate and necessary to enjoin
12 Arhaus from continuing to engage in false or misleading advertising. *Spann v. J.C.*
13 *Penney Corp.*, 307 F.R.D. 508, 519 (C.D. Cal. 2015), *modified*, 314 F.R.D. 312 (C.D.
14 Cal. 2016) (noting, in granting class certification, "proof in this case will produce a
15 common answer as to whether defendant's price-comparison advertising scheme
16 resulted in false price comparisons.").

17     **Typicality.** Plaintiff's claims are typical of Settlement Class Members because
18 they arise from the same course of alleged conduct. *See Just Film, Inc. v. Buono*, 847
19 F.3d 1108, 1118 (9th Cir. 2017) ("The requirement of typicality is not primarily
20 concerned with whether each person in a proposed class suffers the same type of
21 damages; rather, it is sufficient for typicality if the plaintiff endured a course of
22 conduct directed against the class.").

23     Here, while the specific items purchased by plaintiff and other members of the
24 Settlement Class differ, Arhaus's sales practices are consistent across its website.
25 Simply put, Plaintiff suffered the same injury, and was harmed by the same deceptive
26 practices, as the rest of the Settlement Class. *See Ellis v. Costco Wholesale Corp.*, 657
27 F.3d 970, 985 (9th Cir. 2011) ("The test of typicality is whether other members have
28 the same or similar injury, whether the action is based on conduct which is not unique

1    to the named plaintiff[ ], and whether other class members have been injured by the

2    same course of conduct.") (internal quotation marks omitted).

3    **Adequacy.** Plaintiff has and will continue to "fairly and adequately protect the

4    interests of the class." Fed. R. Civ. P. 23(a)(4). To make this determination, "courts

5    must resolve two questions: '(1) do the named plaintiffs and their counsel have any

6    conflicts of interest with other class members and (2) will the named plaintiffs and

7    their counsel prosecute the action vigorously on behalf of the class?'" *Ellis*, 657 F.3d

8    at 985 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

9    Plaintiff adequately represents the Settlement Class, as she has no conflicts of interest

10   with other Settlement Class Members, is subject to no unique defenses, and she and

11   her counsel have and continue to vigorously prosecute this case on behalf of the

12   Settlement Class. *See* Moses Decl. ¶ 8; Cole Decl. ¶ 17. Further, Class Counsel are

13   experienced in the successful litigation and settlement of class action litigation,

14   including consumer protection cases like this one. *See* Cole Decl. ¶¶ 3–7; *Johnson v.*

15   *Moss Bros. Auto Grp.*, No. ED-CV-192456-FMO-SPX, 2021 WL 4556052, at *6

16   (C.D. Cal. June 25, 2021) (Olguin, J.) (adequacy satisfied where "[p]laintiffs are

17   represented by experienced and competent counsel who have litigated numerous class

18   action cases.") (internal quotation mark and citation omitted).

19          **2.    The Settlement Class Meets the Predominance and**
              **Superiority Requirements of Rule 23(b)(3).**
20

21    "In addition to meeting the conditions imposed by Rule 23(a), the parties

22   seeking class certification must also show that the action is maintainable under Fed.

23   R. Civ. P. 23(b) (1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, the Settlement Class

24   is maintainable under Rule 23(b)(3), as common questions predominate over any

25   questions affecting only individual members and class resolution is superior to other

26   available methods for a fair resolution of the controversy. *Id.*

27    Plaintiff's case primarily hinges on whether Arhaus used unfair or deceptive

28   sales practices, including false advertising on its website, which can be resolved using

1  the same evidence for each of the Settlement Class Members, and thus is the precise

2  type of predominant question that makes a class-wide adjudication worthwhile. *See*

3  *Brazil v. Dell, Inc.*, No. C-07-01700 RMW, 2010 WL 5387831, *5 (N.D. Cal. Dec.

4  21, 2010) (granting class certification in former pricing case where "[t]he case

5  turn[ed] on whether the represented former prices listed at the point of sale on Dell's

6  website in the form of "Slash–Thru" prices were false and misleading."); *see also*

7  *Spann*, 307 F.R.D. at 522 ("[i]t may be shown from [defendant's pricing policies,

8  guidelines, practices, and actual sales data] that defendant's advertising practices are

9  deceptive, and that inquiry predominates over any individualized issues that arise in

10  connection with the advertisements themselves."). Further, "the relief sought applies

11  to all class members and is traceable to [P]laintiff's liability case." *Johnson*, 2021 WL

12  4556052, at *6; *see also Brazil*, 2010 WL 5387831, *5 ("Although the class members

13  bought different products at different prices, the proposed methods of calculating

14  damages are common to the class as a whole.").

15      Certification is particularly appropriate in this context because "the proposal is

16  that there be no trial," and so manageability considerations have no impact on whether

17  the proposed Settlement Class should be certified. *Amchem*, 521 U.S. at 620. Thus,

18  there is only the predominant issue of whether Arhaus used unfair or deceptive sales

19  practices, including false advertising on its website, such that Settlement Class

20  Members affected by such practices should be provided with a remedy. As a practical

21  matter, that issue cannot be resolved through individual trials or settlement

22  negotiations: the amount at stake for each individual Settlement Class Member is too

23  small, psychology of sale pricing is too complex, and the required expert testimony

24  and document review too costly. *See Just Film*, 847 F.3d at 1123.

25      Moreover, "there is no indication that any class member is involved in any other

26  litigation concerning the claims in this case." *Johnson*, 2021 WL 4556052, at *7; Cole

27  Decl. ¶ 25. A class action is thus the superior method of adjudicating consumer claims

28  arising from false markdown claims, as in other deceptive trade practices cases where

1 class settlements were approved. *See, e.g.*, *Spann*, 307 F.R.D. at 518 ("District courts
2 in California routinely certify consumer class actions arising from alleged violations
3 of the CLRA, FAL and UCL.")

4      Thus, given that both Rule 23(a) and (b) are satisfied, the Settlement Class
5 should be certified.

6      **B.**    **The Proposed Settlement Should be Preliminarily Approved.**

7         **1.**   **Legal Standard for Preliminary Approval**

8      The Ninth Circuit has a "strong judicial policy that favors settlements,
9 particularly where complex class action litigation is concerned." *Campbell v.*
10 *Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020). Whether to approve a class
11 action settlement is committed to the sound discretion of the trial judge. *In re Mego*
12 *Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

13      Under Rule 23(e)(1), "[t]he court must direct notice in a reasonable manner to
14 all class members who would be bound by the proposal if giving notice is justified by
15 the parties' showing that the court will likely be able to: (i) approve the proposal under
16 Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."
17 Fed. R. Civ. P. 23(e)(1).

18      Rule 23(e)(2) allows the district court to approve a proposal "only after a
19 hearing and only on finding that it is fair, reasonable, and adequate after considering
20 whether: (A) the class representatives and class counsel have adequately represented
21 the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for
22 the class is adequate, taking into account: (i) the costs, risks, and delay of trial and
23 appeal; (ii) the effectiveness of any proposed method of distributing relief to the class,
24 including the method of processing class-member claims; (iii) the terms of any
25 proposed award of attorney's fees, including timing of payment; and (iv) any
26 agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats
27 class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

28      Courts in the Ninth Circuit employ a multi-factor balancing test to analyze

MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

14

whether a given settlement is fair, adequate, and reasonable under Rule 23(e)(2). *See, e.g.*, *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). That test includes the following (*Churchill*) factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Id.*; *see also Perks v. Activehours, Inc.*, No. 5:19-cv-05543-BLF, 2021 WL 1146038, at *4 (N.D. Cal. Mar. 25, 2021) ("This list is not exclusive and different factors may predominate in different factual contexts.").

Based upon the following, the Settlement complies with Rule 23(e), the *Churchill* factors, and the requirements set forth in this Court's Order re: Notice of Settlement and Requirements re: Preliminary Approval (ECF No. 27), and should be preliminarily approved.

## 2. The Court Should Direct Notice Under Rule 23(e)(1).

The Court should order distribution of the Notice Program to the Settlement Class because: (1) the settlement is likely to be approved after the Final Approval Hearing pursuant to the requirements of Rule 23(e)(2), as discussed below; and (2) the Settlement Class is likely to be certified after the Final Approval Hearing pursuant to the requirements of Rule 23(a) & (b), as discussed in Section IV.A, *supra*. *See* Fed. R. Civ. P. 23(e)(1).

## 3. The Settlement is Fair, Reasonable, and Adequate.

### (a) *Class Representative Moses and Class Counsel Adequately Represented the Class (Rule 23(e)(2)(A)).*

Plaintiff and Class Counsel have adequately represented the Settlement Class. Plaintiff has "actively participated in the prosecution of this case," *Norton v. LVNV Funding, LLC*, No. 18-cv-05051-DMR, 2021 WL 3129568, at *8 (N.D. Cal. July 23,

2021), and "[t]here are no indications that [Moses has] failed to adequately represent the interests of the class," *Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*, No. 19-cv-07087-DMR, 2021 WL 1788447, at *10 (N.D. Cal. May 5, 2021). Plaintiff assisted Class Counsel by reviewing the FAC, searching for relevant documents, assisting with preparing Plaintiff's Initial Disclosures, consulting with Class Counsel regarding the lawsuit over email and telephone, and reviewing and approving the Settlement Agreement. Moses Decl. ¶ 4. Moses has no conflicts with the other Settlement Class Members and has adequately represented the Settlement Class in the litigation. *Id.* ¶ 8; Cole Decl. ¶ 17.

Likewise, Class Counsel has vigorously prosecuted this case. Prior to filing, Class Counsel investigated the available facts and potential claims arising from the sales practices implemented on Arhaus's website. Cole Decl. ¶ 8. Upon receiving Arhaus's answer to the FAC, Class Counsel promptly propounded its initial discovery requests. *Id.* at ¶ 9. Class Counsel also drafted a detailed mediation statement after reviewing documentation and responses to interrogatories produced by Arhaus. *Id.* at ¶ 10. Class Counsel engaged in mediation with the assistance of Judge Ghandi (ret.). *Id.* Class Counsel acted efficiently and expeditiously to obtain an excellent result for the class because of their many years of litigating and settling class-action cases, including cases that arise under the UCL, FAL, and CLRA. *See id.* at ¶ 18.

**(b)** ***The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B)).***

The Settlement was reached in the absence of collusion and is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and the legal and factual issues in this Case. Cole Decl. ¶ 12. The Parties engaged in mediation before an experienced mediator in reaching the Settlement. *Id.* at ¶ 10. Prior to mediation, Arhaus provided Class Counsel with discovery regarding its sales practices. *Id* ¶ 9. The Parties also exchanged mediation briefs, wherein they discussed the strengths and weaknesses of their respective claims

and defenses. *Id*. This exchange of information, and the guidance of the mediator, allowed the Parties to promptly reach an agreement in principle as to the material terms of the Settlement. *Id*. ¶¶ 11–12. The Parties' vigorous negotiation of the claims evidences an absence of collusion and the presence of fairness and good faith. Cole Dec. ¶¶ 12, 20;  *see also, e.g.*, *Anderson v. Sherwin-Williams Co.*, No. ED-CV-172459-FMO-SHKX, 2020 WL 7051099, at *9 (C.D. Cal. May 12, 2020) (finding settlement non-collusive where parties mediated before retired judge and "the parties thoroughly investigated and considered their own and the opposing parties' positions"); *Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-05248-MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

### (c)     *The Costs, Risks, and Delay of Trial and Appeal (Rule 23(e)(2)(C)(i))*

By negotiating a Settlement at this early stage of the litigation, the Parties have ensured that Settlement Class Members will receive substantial benefitsabove while avoiding the risks and potential pitfalls of prolonged litigation. While confident in the strength of their claims, Plaintiff and Class Counsel are also pragmatic and recognize the risks inherent in litigation of unfair and deceptive sales practices. *See* Cole Decl. ¶ 21.

Indeed, the proper measure to calculate damages in a false-markdown case is unsettled in California courts. *Id*. ¶ 22; *see also Spann*, 307 F.R.D. at 533 (identifying potential damages' metrics as: "1) complete restitution, measured by the full purchase price paid by each class member; 2) restitution based on the false 'transaction value' promised by [defendant], measured by the amount that each class member would have paid had [defendant] offered a discount from the actual 'regular' price; or 3) restitution in the amount that [defendant] profited from sales of products based on deceptive price comparisons."). Thus, further litigation to definitively resolve how damages should be resolved could substantially prolong this litigation as this Court,

the Ninth Circuit, and California courts (if the question were certified to state court) grapple with this unsettled question.

Thus, the risks, expense, complexity, and likely duration of further litigation support preliminary approval of the Settlement. Cole Decl. ¶¶ 21–23. Should the case proceed in litigation, Moses's claims could be dismissed or narrowed at summary judgment, at trial, or on a subsequent appeal. Moses also faces the risk that class certification could be denied. *Id.* Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal, resulting in *zero* recovery for the Class. *Id.* And even if Moses prevails at trial, any recovery for her and the class could be delayed for years by an appeal.

In contrast, the Settlement provides immediate and substantial benefits to over 38,000 California consumers—similar to the relief and benefits obtained in other UCL and FAL class actions—and on a much faster timeline. *See, e.g.*, Final Settlement Order, *Khan v. Boohoo.com USA, Inc., et al.*, No. 2:20-cv-03332-GW-JEM, ECF No. 203 (C.D. Cal.). In this case, the total sales for the Settlement Class was approximately $75 million. Cole Dec., ¶ 27. The average discount represented on the Arhaus products sold (i.e., the delta between the strikethrough price and sales price) was approximately 40%, which is equal to about $30 million of the total sales. *Id.* Thus, when considering the alleged "false transaction value promised by [Arhaus]", *Spann*, F.R.D. at 533, against the litigation risk inherent in this case (i.e., the ability to establish actual damages or basis for restitution, the ability to certify a class, etc.), a class recovery of $6 million (20% of the $30 million delta) is not just reasonable but actually superior to many of the analogous settlements discussed in Section V.B.3.4(a) of this Motion.

It is "plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co.*, No. 09-cv-1786-L(WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here,

as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos.*, No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). If the Settlement is not approved, the Parties will likely need to litigate through multiple dispositive motions and a motion for class certification, as well as trial and appeal.

An early resolution, before both sides spend significant sums on litigation costs, is in the best interest of the Settlement Class. "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting preliminary approval." *Hillman v. Lexicon Consulting*, No. ED-CV-16-01186-VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. Apr. 27, 2017). This factor favors preliminary approval.

### (d) *The Effectiveness of Any Proposed Method of Distributing Relief to the Settlement Class (Rule 23(e)(2)(C)(ii))*

The proposed method of distributing relief to the Settlement Class, including the method of processing Settlement Class Member Claims, is highly effective. Cole Decl. ¶ 16. The Notice Program is designed to reach as many Settlement Class Members as possible and is the best notice practicable under the circumstances of the instant case. The federal rules require that, before finally approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Where the settlement class is certified pursuant to Rule 23(b)(3), the notice must also be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The notice provided to class members should "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the

1   time and manner for requesting exclusion; and the binding effect of a class judgment

2   on class members. Fed. R. Civ. P. 23(c)(2)(B). The Notice Program complies with

3   those requirements.

4       Here, Settlement Class Members will an e-mail, postcard in the mail, and text

5   message, all of which are designed to catch their attention and alert them to the

6   Settlement and available remedies. There will also be a Settlement Website that will

7   make pertinent case documents available for download, including the operative FAC

8   and Settlement Agreement, as well as a toll-free phone number to which Settlement

9   Class Members can direct any questions.

10      The Parties believe that this is the most effective way to alert the Settlement

11  Class Members to the existence of the Settlement and convey detailed information

12  about the Settlement approval process, and accordingly ask that the Court approve the

13  proposed forms of notice. Cole Decl. ¶ 16; *see Schaffer v. Litton Loan Servicing, LP*,

14  No. CV 05–07673 MMM (JCx), 2012 WL 10274679, at *8 (C.D. Cal. Nov. 13, 2012)

15  (approving similar postcard notice plan).

16      The opt-out, objection, and notice procedures are also effective and reasonable.

17  Cole Decl. ¶ 16. The Notice Program will advise Settlement Class Members of their

18  right to opt out of or object to the Settlement and of the associated deadlines and

19  procedure to do so. *See* Section IV.D, *supra*.

20      Likewise, the method of processing Settlement Class Members' Claims is

21  similarly effective. Cole Decl. ¶ 16.

22          **(e)    *The Terms of the Proposed Award of Attorneys' Fees***
23                  ***(Rule 23(e)(2)(C)(iii))***

24      In examining the terms of any proposed award of attorneys' fees, courts must

25  apply the factors set forth in *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935

26  (9th Cir. 2011) ("*Bluetooth*") to determine if collusion may have led to class members

27  being shortchanged: (1) "when counsel receives a disproportionate distribution of the

28  settlement, or when the class receives no monetary distribution but class counsel are

MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

amply rewarded"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries 'the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class'"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* at 947 (citations omitted). Additionally, the court must "balance the 'proposed award of attorney's fees' vis-à-vis the 'relief provided for the class' in determining whether the settlement is 'adequate' for class members." *Briseño v. Henderson*, 998 F.3d 1014, 1024 (9th Cir. 2021) (citation omitted).

Here, the proposed award of attorneys' fees complies with *Bluetooth* and *Briseño* and is proportionate in relationship to the relief provided to the Settlement Class Members. The Class Settlement Amount is $6,000,000 and Class Counsel will request a fee of no more than 25% of that amount, which is consistent with the Ninth Circuit's benchmark and not a disproportionate distribution of the Settlement (*i.e.*, the first *Bluetooth* factor is not implicated here).[4] Furthermore, the Parties have not negotiated a "clear sailing" arrangement[5] as the Parties have not agreed that Arhaus will not contest Class Counsel's fee petition.

### (f)    There Are No Additional Agreements (Rule 23 (e)(2)(C)(iv)).

---

[4] Plaintiff intends to submit a motion for attorneys' fees, including pertinent lodestar calculations in support.

[5] The Ninth Circuit defines a clear sailing agreement as "an arrangement where defendant will not object to a certain fee request by class counsel." *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (emphasis added); *See also In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 940 n.6 & 947 (9th Cir. 2011) (defining clear sailing agreement as one "wherein the defendant agrees not to oppose a petition for a fee award up to a specified maximum value" and "providing for the payment of attorneys' fees separate and apart from class funds") (emphasis added).

---

The proposed Settlement is the only agreement related to this lawsuit. There are no additional agreements made in connection with the proposal. Cole Decl. ¶ 26.

### (g) *The Settlement Treats Settlement Class Members Equitably (Rule 23(e)(2)(D)).*

The Settlement provides for a notice plan that is designed to reach as many persons within the Settlement Class as possible and provides persons within the Settlement Class with direct notice of the Settlement. *See* Section IV.D., *supra*. It also informs persons within the Settlement Class of their right to object to, or opt out of, the Settlement. And each person within the Settlement Class can submit a Claim Form to receive their pro rata share of the Net Settlement Amount. Thus, the Settlement treats persons within the Settlement Class equitably relative to each other and is consistent with the distribution of funds in settlements of other former price cases. *See* Cole Decl. ¶¶ 18–20.

Indeed, after paying anticipated Notice and Administration expenses (estimated at $159,780), Attorneys' Fees (capped at $1,500,000); Costs (capped at $50,000), and Service Award ($10,000), from the $6 million Class Settlement Amount, approximately $4,280,220 will be distributed to the Settlement Class Members. Assuming a 25% claims rate (*i.e.*, 9,596 of the 38,383 Settlement Class Members), ILYM Group Decl. ¶ 10, the Settlement Class Members will each receive an average payment of approximately $446.04 (although the Settlement Shares for each claimant will be proportionate to the amount of their purchase relative to the aggregate amount of claims submitted).

### 4.    Additional *Churchill* Factors Favor Final Approval.

### (a)    *The Amount Offered in the Settlement*

While it is not among the Rule 23(e) factors, the "relief that the settlement is expected to provide to class members is a central concern." *Wong v. Arlo Techs., Inc.*, No. 5:19-cv-00372-BLF, 2021 WL 1531171, at *9 (N.D. Cal. Apr. 19, 2021); *see also Churchill Vill., L.L.C.*, 361 F.3d at 575. Here, the Settlement is a strong result for the

Settlement Class and provides a significantly better result than achieved in settlements in other false markdown cases of similar scope. *See* Cole Decl. ¶¶ 18–19.

In this case, the pure average amount (not the pro rata share described in the Settlement Agreement) each putative class member will receive is $156.32 ($6,000,000 ÷ 38,383). But even when analyzed in this basic manner, it is clear that the value provided to each class member here far exceeds that value received in other cases, as outlined by the following examples:

<u>Rivali v. Shutterfly LLC, et al., Case No. 2:22-cv-02175 (C.D. Cal.)</u>

- Settlement amount: $119,600,000
- Class size: 23,000,000
- Average dollar value per class member: $5.20
- Actual benefit received: $5 gift card (if no claim submitted), $25 gift card (if valid claim submitted)

<u>Spann v. J.C. Penny Corporation Inc., Case No. 8:12-cv-00215 (C.D. Cal.)</u>

- Settlement amount: $50,000,000
- Class size: estimated 8.8 million to 11.1 million
- Average dollar value per class member: $4.50 – $5.68
- Actual benefit received: estimated $5 – $6 cash payments

<u>Khan v. Boohoo.com USA, Inc., Case No. 2:20-cv-03332 (C.D. Cal.)</u>

- Settlement amount: $32,500,000
- Class size: 1,882,885
- Average dollar value per class member: $17.26
- Actual benefit received: $10 gift card (plus free shipping at a value of $7.95)

<u>Zuccaro v. Hot Topic, Inc., Case No 3:23-cv-01242 (D. Or.)</u>

- Settlement amount: estimated $16,000,000
- Class size: estimated 1,000,000
- Average dollar value per class member: $16

- Actual benefit received: $10 store credit or cash

<u>Aberl v. Ashley Global Retail, LLC</u>, Case No. 37-2023-000115360-CU-BT-NC (San Diego Sup. Ct.)

- Settlement amount: estimated $24,708,500
- Class size: 5,043,876
- Average dollar value per class member: $4.90
- Actual benefit received: $30 voucher

<u>Martinez v. American Freight LLC</u>, Case No. 37-2024-00002841-CU-BT-NC (San Diego Sup. Ct.)

- Settlement amount: estimated $33,212,800
- Class size: 1,319,363
- Average dollar value per class member: $25.17
- Actual benefit received: $25 voucher

<u>Chester v. The TJX Companies, Inc.</u>, Case No. 5:15-cv- 01437-ODW (C.D. Cal.)

- Settlement amount: estimated $8,500,000
- Class size:   208,000
- Average dollar value per class member: $40.87
- Actual benefit received: $25 credit or $19 cash

*See* Cole Decl. ¶ 19.

Additionally, because the Settlement in this case provides value to each class member relative to their purchase amount, the Settlement is significantly better than the settlements approved in the above cases where class members only received a set amount of store credit or gift card. Thus, this factor reflects that the Settlement is fair. *See Calderon v. Wolf Firm*, No. SACV 16-1622-JLS(KESx), 2018 WL 6843723, at *7-8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases).

(b)   ***The Views of Class Counsel***

1  In the view of Class Counsel (who are experienced in class-action litigation,
2  including cases under the UCL, FAL, and CLRA), this Settlement is an outstanding
3  recovery for the Settlement Class. Cole Decl. ¶¶ 18–20. To the best of Class Counsel's
4  knowledge, this is the largest settlement ever reached on a per-class-member basis in
5  a false markdown case. *Id*. at ¶ 18. "'Great weight' is accorded to the recommendation
6  of counsel, who are most closely acquainted with the facts of the underlying
7  litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528
8  (C.D. Cal. 2004). Thus, this *Churchill* factor supports preliminary approval. *Wong*,
9  2021 WL 1531171, at *9.

10  **5.    Notice Will be Provided Under CAFA.**

11  Arhaus is responsible for timely compliance with all CAFA (Class Action
12  Fairness Act) notice requirements under 28 U.S.C. § 1715(b). SA ¶ 4.5.7.

13  **C.    The Court Should Appoint the Settlement Administrator.**

14  The Parties respectfully request that the Court appoint ILYM Group to serve as
15  Settlement Administrator. ILYM Group has experience serving as a settlement
16  administrator in many large and complex class-action lawsuits, including in consumer
17  class actions. ILYM Group Decl., ¶ 2, Ex A.

18  **D.    The Court Should Schedule a Final Approval Hearing.**

19  A key advantage of early resolution is the ability of Settlement Class Members
20  to receive the benefits of the Settlement in short order. To that end, the Parties
21  respectfully request the Court schedule a Preliminary Approval Hearing as soon as
22  possible and schedule a Final Approval Hearing as the Court deems appropriate after
23  entry of the Preliminary Approval Order.

24  **VI.    CONCLUSION**

25  For the foregoing reasons, Plaintiff requests that the Court preliminarily
26  approve the Settlement, enter the Preliminary Approval Order, appoint her as Class
27  Representative, appoint Kevin J. Cole of KLC Law Group, A.P.C. as Class Counsel,
28  direct the Notice Program be implemented, and schedule a Final Approval Hearing.

MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

Dated:   May 27, 2025                          Respectfully submitted,

*/s/ Kevin J. Cole*
Kevin J. Cole (Bar No. 321555)
kevin@kjclawgroup.com
Christopher R. Ramos (Bar No. 301556)
ramosc@kjclawgroup.com
W. Blair Castle (Bar No. 354085)
blair@kjclawgroup.com
**KJC LAW GROUP, A.P.C.**
9701 Wilshire Blvd., Suite 1000
Beverly Hills, CA 90212
Telephone: (310) 861-7797

*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

        I HEREBY CERTIFY that on May 27, 2025, I electronically filed the foregoing
document with the Clerk of the Court using CM/ECF, which will electronically serve
all counsel of record.

                                    /s/*Kevin J. Cole*

---

MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT