1
2
3
4
5
6
7
8                   **UNITED STATES DISTRICT COURT**
9                   **CENTRAL DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| MARIAH MOSES, individually and on behalf of all others similarly situated, | Case No. SA CV 24-0728 FMO (ADSx) |
| Plaintiff, | |
| v. | **ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| ARHAUS, INC., | |
| Defendant. | |

Having reviewed and considered all the briefing filed with respect to plaintiff's Renewed Motion for Order Granting Preliminary Approval of Class Action Settlement (Dkt. 39, "Motion"), and the oral argument presented at the hearing on July 3, 2025, the court concludes as follows.

## BACKGROUND

On April 2, 2024, Mariah Moses ("Moses" or "plaintiff"), filed this putative class action against Arhaus, Inc. ("defendant" or "Arhaus"), asserting state consumer law claims for violation of California's: (1) Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.; (2) False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, et seq.; and (3) Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq. (See Dkt. 1, Compl. at ¶¶ 52-85). The Complaint also included a claim for fraudulent concealment. (Id. at ¶¶ 86-95). On June 3, 2024, plaintiff filed a First Amended Complaint ("FAC"), eliminating the fourth cause of action for fraudulent concealment. (See Dkt. 18, FAC at ¶¶ 50-84).

The parties participated in a mediation on September 6, 2024. (See Dkt. 39, Motion at 3); (Dkt. 39-1, Declaration of Kevin J. Cole ("Cole Decl.") at ¶¶ 10-11). The parties continued to negotiate and reached an agreement. (See Dkt. 39, Motion at 3). Plaintiff filed a Notice of Settlement on November 7, 2024. (See Dkt. 26, Notice of Settlement). On February 11, 2025, plaintiff filed an initial motion for preliminary approval. (See Dkt. 33, Motion for Preliminary Approval).

The court held a preliminary approval hearing on April 24, 2025, and after noting several issues with the proposed settlement and the motion for preliminary approval, the court denied the motion without prejudice. (See Dkt. 38, Court's Order of April 24, 2025). The parties subsequently executed a First Amended Settlement Agreement ("Agreement") on May 27, 2025, (see Dkt. 39-1, Cole Decl. at ¶ 13); (Dkt. 39-1, Exh. 1, First Amended Settlement Agreement and Release ("Agreement")), and plaintiff filed the instant renewed Motion for Preliminary Approval. (See Dkt. 39, Motion). The court held a hearing on the instant Motion on July 3, 2025. (See Dkt. 41, Court's Order of July 3, 2025).

The parties have defined the settlement class as "all persons in the State of California who purchased one or more of Arhaus's products on the Arhaus website between April 2, 2020 through September 18, 2024 and where the purchased product(s) listed both a current sale price and also referenced a second, higher price (with or without a 'strike' through it)."[1] (Dkt. 39-1, Exh. 1, Agreement at ¶ 2.1.30). Pursuant to the settlement, defendant will pay a non-reversionary gross settlement amount of $6,000,000, (see id. at ¶¶ 4.6, 4.6.1.1); (Dkt. 39, Motion at 5), which will be used to pay the class members, the class representative's service award, the settlement administrator, and attorney's fees and costs. (See Dkt. 39-1, Exh. 1, Agreement at ¶¶ 4.6.1.1, 4.6.1.2, 4.6.1.3, 4.6.3); (Dkt. 39, Motion at 9, 22). The settlement provides for up to 25% of the gross settlement amount in attorney's fees ($1,500,000); costs not to exceed $50,000; and an incentive payment of $5,000 for plaintiff. (See Dkt. 39-1, Exh. 1, Agreement at ¶¶ 4.6.1.1, 4.6.1.2);

---

[1] "Excluded from the Settlement Class are any and all past or present officers, directors, or employees of Arhaus, any judge who presides over this action, and any partner or employee of Class Counsel." (Dkt. 39-1, Exh. 1, Agreement at ¶ 2.1.30).

(Dkt. 39, Motion at 9, 22).  The proposed settlement administrator, ILYM Group Inc., will be paid an estimated $159,780, and no more than $200,000.  (Dkt. 39, Motion at 6-7); (Dkt. 39-1, Exh. 1, Agreement at ¶ 4.6.1.3).  According to plaintiff, the net settlement amount is expected to be approximately $4,280,220,[2] (see Dkt.39, Motion at 22), which would result in an average net individual payment of approximately $446.04.[3]  (See id. at 22) (assuming a 25% claims rate).

        In her Motion, plaintiff seeks an order:  (1) preliminarily approving the proposed settlement agreement; (2) conditionally certifying the proposed settlement class; (3) appointing Moses as class representative; (4) appointing Kevin J. Cole of KJC Law Group APC as class counsel; (5) appointing ILYM Group Inc. as the settlement administrator; (6) approving and ordering dissemination of the proposed class notice program; and (7) scheduling a final approval hearing. (See Dkt. 39, Motion at 1).

## **LEGAL STANDARDS**

I.    CLASS CERTIFICATION.

        At the preliminary approval stage, the court "may make either a preliminary determination that the proposed class action satisfies the criteria set out in Rule 23 . . . or render a final decision as to the appropriateness of class certification."[4]  Smith v. Wm. Wrigley Jr. Co., 2010 WL 2401149, *3 (S.D. Fla. 2010) (citation and footnote omitted); see also Sandoval v. Roadlink USA Pac., Inc., 2011 WL 5443777, *2 (C.D. Cal. 2011) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S.Ct. 2231, 2248 (1997) ("Parties seeking class certification for settlement purposes must

---

[2]    This amount is based on a service award of $10,000, (see Dkt. 39, Motion at 22), rather than the $5,000 set forth in the Agreement.  (See Dkt. 39-1, Exh. 1, Agreement at § 4.6.1.2).

[3]    Individual class payments for each Claimant will be a pro rata share of the Net Settlement Amount, calculated "based on the Claimant's total qualifying purchase amount divided by the total aggregate purchase amount of all Settlement Class Members during the Settlement Class Period." (Dkt. 39-1, Exh. 1, Agreement at ¶ 4.6.3.1).  However, payments will be capped at 50% of the Claimant's total qualifying purchase amount.  (See id.).  Claimants can elect to receive cash or Store Credit of equal value.  (Id. at 4.6.3).  Any undistributed settlement funds will be distributed to the National Consumer Law Center in the form of a cy pres distribution.  (See Dkt. 39, Motion at 6); (Dkt. 39-1, Exh. 1, Agreement at ¶ 4.6.7.2).

[4]    All "Rule" references are to the Federal Rules of Civil Procedure.

1  satisfy the requirements of Federal Rule of Civil Procedure 23[.]").  In the settlement context, a

2  court must pay "undiluted, even heightened, attention" to the class certification requirements.

3  Amchem, 521 U.S. at 620, 117 S.Ct. at 2248; accord In re Volkswagen "Clean Diesel" Mktg.,

4  Sales Pracs., & Prods. Liab. Litig., 895 F.3d 597, 606 (9th Cir. 2018).  "Such attention is of vital

5  importance, for a court asked to certify a settlement class will lack the opportunity, present when

6  a case is litigated, to adjust the class, informed by the proceedings as they unfold." Amchem, 521

7  U.S. at 620, 117 S.Ct. at 2248.

8         A party seeking class certification must first demonstrate that: "(1) the class is so numerous

9  that joinder of all members is impracticable; (2) there are questions of law or fact common to the

10  class; (3) the claims or defenses of the representative parties are typical of the claims or defenses

11  of the class; and (4) the representative parties will fairly and adequately protect the interests of the

12  class."  Fed. R. Civ. P. 23(a).  Courts refer to these requirements by the following shorthand:

13  "numerosity, commonality, typicality and adequacy of representation[.]"  Mazza v. Am. Honda

14  Motor Co., Inc., 666 F.3d 581, 588 (9th Cir. 2012), overruled on other grounds by Olean

15  Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC, 31 F.4th 651 (9th Cir. 2022) (en banc).

16  In addition to fulfilling the four prongs of Rule 23(a), the proposed class must meet at least one

17  of the three requirements listed in Rule 23(b).[5]  See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338,

18  _____

19       [5]   Rule 23(b) is satisfied if:

20       (1) prosecuting separate actions by or against individual class members would
         create a risk of:

21            (A) inconsistent or varying adjudications with respect to individual class

22            members that would establish incompatible standards of conduct for the
              party opposing the class; or

23            (B) adjudications with respect to individual class members that, as a practical

24            matter, would be dispositive of the interests of the other members not parties
              to the individual adjudications or would substantially impair or impede their
              ability to protect their interests;

25       (2) the party opposing the class has acted or refused to act on grounds that apply

26       generally to the class, so that final injunctive relief or corresponding declaratory relief
         is appropriate respecting the class as a whole; or

27       (3) the court finds that the questions of law or fact common to class members

28       predominate over any questions affecting only individual members, and that a class
         action is superior to other available methods for fairly and efficiently adjudicating the

1  345, 131 S.Ct. 2541, 2548 (2011).

2      "Before it can certify a class, a district court must be satisfied, after a rigorous analysis, that

3  the prerequisites of both Rule 23(a) and" the applicable Rule 23(b) provision have been satisfied.

4  <u>Olean Wholesale</u>, 31 F.4th at 664 (internal quotation marks omitted); <u>see</u> <u>Dukes</u>, 564 U.S. at 345,

5  131 S.Ct. at 2548.  A plaintiff "must prove the facts necessary to carry the burden of establishing

6  that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence."  <u>Olean</u>

7  <u>Wholesale</u>, 31 F.4th at 665.  However, Rule 23(b)(3) issues regarding manageability are "not a

8  concern in certifying a settlement class where, by definition, there will be no trial."  <u>In re Hyundai</u>

9  <u>and Kia Fuel Econ. Litig.</u>, 926 F.3d 539, 556-57 (9th Cir. 2019) (<u>en</u> <u>banc</u>).

10  II.    FAIRNESS OF CLASS ACTION SETTLEMENT.

11      Rule 23 provides that "[t]he claims, issues, or defenses of a certified class – or a class

12  proposed to be certified for purposes of settlement – may be settled . . . only with the court's

13  approval."  Fed. R. Civ. P. 23(e).  "The primary concern of [Rule 23(e)] is the protection of th[e]

14  class members, including the named plaintiffs, whose rights may not have been given due regard

15  by the negotiating parties."  <u>Officers for Just. v. Civ. Serv. Comm'n of the City & Cnty. of San</u>

16  <u>Francisco</u>, 688 F.2d 615, 624 (9th Cir. 1982).  Whether to approve a class action settlement is

17  "committed to the sound discretion of the trial judge."  <u>Class Plaintiffs v. City of Seattle</u>, 955 F.2d

18  1268, 1276 (9th Cir. 1992) (internal quotation marks omitted).

19      Approval of a class action settlement requires a two-step process – preliminary approval

20  and the dissemination of notice to the class, followed by a later final approval.  <u>See</u> <u>Spann v. J.C.</u>

21  <u>Penney Corp.</u> ("<u>Spann II</u>"), 314 F.R.D. 312, 319 (C.D. Cal. 2016).  "[T]he showing at the

22  _____

23      controversy.  The matters pertinent to these findings include:
            (A) the class members' interests in individually controlling the prosecution or
24          defense of separate actions;
            (B) the extent and nature of any litigation concerning the controversy already
25          begun by or against class members;
            (C) the desirability or undesirability of concentrating the litigation of the claims
26          in the particular forum; and
            (D) the likely difficulties in managing a class action.
27

28  Fed. R. Civ. P. 23(b)(1)-(3).

preliminary approval stage – given the amount of time, money, and resources involved in, for example, sending out . . . class notice[] – should be good enough for final approval." Id.; see also 4 Newberg on Class Actions § 13:10 (6th ed. 2024) ("[S]ending notice to the class costs money and triggers the need for class members to consider the settlement, actions which are wasteful if the proposed settlement [is] obviously deficient from the outset.").   The court may grant preliminary approval and direct notice in a reasonable manner to all class members who would be bound by the settlement if the parties provide sufficient information to show that the court will likely be able to:  (1) "approve the proposal under Rule 23(e)(2);" and (2) "certify the class for purposes of judgment on the [settlement] proposal."  Fed. R. Civ. P. 23(e)(1)(B); see Macy v. GC Servs. Ltd. P'ship, 2019 WL 6684522, *1 (W.D. Ky. 2019) ("The standard for preliminary approval was codified in 2018, with Rule 23 now providing for notice to the class upon the parties' showing that the court will likely be able to approve the proposed settlement under the final-approval standard contained in Rule 23(e)(2).") (internal quotation marks omitted); 4 Newberg on Class Actions § 13:10 (6th ed. 2024) ("In 2018, Congress codified this approach into Rule 23.  Rule 23(e)(1)(B) now sets forth the grounds for the initial decision to send notice of a proposed settlement to the class[.]").

       "At this stage, the court may grant preliminary approval of a settlement and direct notice to the class if the settlement:  (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval."  Spann II, 314 F.R.D. at 319 (internal quotation marks omitted); see Bronson v. Samsung Elecs. Am., Inc., 2019 WL 5684526, *7 (N.D. Cal. 2019) (same); see also 2018 Adv. Comm. Notes to Amendments to Rule 23(e)(1) (The types of information that should be provided to the court in deciding whether to send notice – i.e., that it will likely approve the settlement under Rule 23(e)(2) and certify the class for purposes of settlement – "depend on the specifics of the particular class action and proposed settlement."  "[G]eneral observations" as to the types of information that should be provided include, but are not limited to, the following:  (1) "the extent and type of benefits that the settlement will confer on the members of the class" and if "funds are

. . . left unclaimed, the settlement agreement ordinarily should address the distribution of those funds"; (2) "information about the likely range of litigated outcomes, and about the risks that might attend full litigation"; (3) "[i]nformation about the extent of discovery completed in the litigation or in parallel actions"; (4) "information about the existence of other pending or anticipated litigation on behalf of class members involving claims that would be released under the proposal"; (5) "[t]he proposed handling of an award of attorney's fees under Rule 23(h)"; (6) "any agreement that must be identified under Rule 23(e)(3)"; and (7) "any other topic that [the parties] regard as pertinent to the determination whether the proposal is fair, reasonable, and adequate.").

## DISCUSSION

I.    CLASS CERTIFICATION.

    A.    Rule 23(a) Requirements.

        1.    **Numerosity**.

A putative class may be certified only if it "is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "Although the size of the class is not the sole determining factor, . . . where a class is large in numbers, joinder will usually be impracticable." A.B. v. Hawaii State Dep't of Educ., 30 F.4th 828, 835 (9th Cir. 2022) (internal quotation marks omitted). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members[.]" Slaven v. BP Am., Inc., 190 F.R.D. 649, 654 (C.D. Cal. 2000); accord Tait v. BSH Home Appliances Corp., 289 F.R.D. 466, 473 (C.D. Cal. 2012).

Here, the class is so numerous that joinder is impracticable. The settlement class includes approximately 38,383 class members, (Dkt. 39, Motion at 4); (Dkt. 39-1, Cole Decl. at ¶ 14), which easily exceeds the minimum threshold for numerosity.

        2.    **Commonality**.

The commonality requirement is satisfied if "there are questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). Proof of commonality under Rule 23(a) is "less rigorous" than the related predominance standard under Rule 23(b)(3). See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998), overruled on other grounds as recognized by DZ Reserve v. Meta Platforms, Inc., 96 F.4th 1223, 1238 (9th Cir. 2024); Mazza, 666 F.3d at 589 (same).

1  Commonality requires plaintiffs to demonstrate that their claims "depend upon a common

2  contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one

3  of the claims in one stroke." <u>Dukes</u>, 564 U.S. at 350, 131 S.Ct. at 2551; <u>see</u> <u>Wolin v. Jaguar Land</u>

4  <u>Rover N. Am., LLC</u>, 617 F.3d 1168, 1172 (9th Cir. 2010) (The commonality requirement demands

5  that "class members' situations share a common issue of law or fact, and are sufficiently parallel

6  to insure a vigorous and full presentation of all claims for relief.") (internal quotation marks

7  omitted).   "The plaintiff must demonstrate the capacity of classwide proceedings to generate

8  common answers to common questions of law or fact that are apt to drive the resolution of the

9  litigation." <u>Mazza</u>, 666 F.3d at 588 (internal quotation marks omitted).  "This does not, however,

10  mean that every question of law or fact must be common to the class; all that Rule 23(a)(2)

11  requires is a single significant question of law or fact." <u>Abdullah v. U.S. Sec. Assocs., Inc.</u>, 731

12  F.3d 952, 957 (9th Cir. 2013) (emphasis and internal quotation marks omitted); <u>see</u> <u>Mazza</u>, 666

13  F.3d at 589 (characterizing commonality as a "limited burden[,]" stating that it "only requires a

14  single significant question of law or fact").  "The existence of shared legal issues with divergent

15  factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal

16  remedies within the class." <u>Hanlon</u>, 150 F.3d at 1019.

17       This case involves common class-wide questions that are apt to drive the resolution of the

18  litigation.  The main issue in this action involves whether defendant "engaged in false or deceptive

19  sales practices by representing that items were on sale[,]" – that is, advertising its prices alongside

20  a false original reference price – "when the items had not recently (if ever) been sold at the

21  Reference Price."  (Dkt. 39, Motion at 11); (<u>see</u> Dkt. 18, FAC at ¶¶ 1, 15-19 & 46).  Under the

22  circumstances, the court finds that plaintiff has satisfied the commonality requirement. <u>See</u>, <u>e.g.</u>,

23  <u>Spann v. J.C. Penney Corp.</u> ("<u>Spann I</u>"), 307 F.R.D. 508, 518 (C.D. Cal. 2015), <u>modified</u>, 314

24  F.R.D. 312 (C.D. Cal. 2016) (concluding the commonality requirement was satisfied where

25  "common questions include[d], but [were] not limited to: (1) whether defendant's price-comparison

26  advertising scheme . . . was false or misleading within the meaning of the UCL, FAL or CLRA; (2)

27  whether defendant made false statements in its advertisements; (3) whether defendant's

28  advertisements were likely to deceive a reasonable consumer"); <u>Brazil v. Dell Inc.</u>, 2010 WL

5387831, *1, 3 (N.D. Cal. 2010) (noting there was no dispute that the commonality requirement was satisfied for a putative class alleging the defendant "creat[ed] the illusion of discounts and savings through false discounts from false former prices"); see also Chavez v. Blue Sky Natural Beverage Co., 268 F.R.D. 365, 377 (N.D. Cal.2010) (holding that the commonality requirement was satisfied where plaintiff alleged the defendant's "packaging and marketing materials [were] unlawful, unfair, deceptive or misleading to a reasonable consumer"); Ries v. Arizona Beverages USA LLC, 287 F.R.D. 523, 537 (N.D. Cal. 2012) ("[P]laintiffs have identified several legal and factual issues common to the putative class's claims, including, for instance, whether the use of" certain terms "violates the UCL, FAL, or CLRA.").

3.    **Typicality**.

"Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks omitted). To demonstrate typicality, the class representative's claims must be "reasonably co-extensive with those of absent class members[,]" although "they need not be substantially identical." Hanlon, 150 F.3d at 1020; see Ellis, 657 F.3d at 984 ("Plaintiffs must show that the named parties' claims are typical of the class."). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Ellis, 657 F.3d at 984 (internal quotation marks omitted).

Here, plaintiff was subject to the same online sales practices – that is, defendant's allegedly misleading pricing scheme – that other class members similarly encountered on defendant's website. (See Dkt. 39, Motion at 11) ("[W]hile the specific items purchased by plaintiff and other members of the Settlement Class differ, Arhaus's sales practices are consistent across its website."). Thus, her claims arise from the same nucleus of facts as those of the class and are based on the same legal theories, i.e., that defendant's false reference pricing scheme misled consumers. (See Dkt. 18, FAC at ¶¶ 1, 44, 60, 63, 73); see, e.g., Brown v. NFL Players Ass'n., 281 F.R.D. 437, 442 (C.D. Cal. 2012) (finding typicality requirement satisfied where the plaintiff's

1    claims were based on "the same event or practice or course of conduct that g[ave] rise to the

2    claims of other class members and . . . are based on the same legal theory") (internal quotation

3    marks omitted); Spann I, 307 F.R.D. at 519 ([P]laintiff's claims are based on the same facts and

4    the same legal and remedial theories as the claims of the rest of the class members."). 

5    Additionally, the court is not aware of any facts that would subject plaintiff "to unique defenses

6    which threaten to become the focus of the litigation." Hanon v. Dataproducts Corp., 976 F.2d 497,

7    508 (9th Cir. 1992) (internal quotation marks omitted).  In short, plaintiff has satisfied the typicality

8    requirement.

9                    4.    **Adequacy of Representation**.

10    "The named Plaintiffs must fairly and adequately protect the interests of the class." Ellis,

11    657 F.3d at 985 (citing Fed. R. Civ. P. 23(a)(4)).  "To determine whether [the] named plaintiffs will

12    adequately represent a class, courts must resolve two questions:  (1) do the named plaintiffs and

13    their counsel have any conflicts of interest with other class members and (2) will the named

14    plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Id. (internal

15    quotation marks omitted).  "Adequate representation depends on, among other factors, an

16    absence of antagonism between representatives and absentees, and a sharing of interest

17    between representatives and absentees." Id.

18    Here, the proposed class representative, Moses, has no individual claims separate from

19    the class claims, (see, generally, Dkt. 18, FAC), and does not appear to have any conflicts of

20    interest with the absent class members.  (See Dkt. 39, Motion at 12); (Dkt. 39-2, Declaration of

21    Mariah Moses ("Moses Decl.") at ¶ 8); (Dkt. 39-1, Cole Decl. at ¶ 17); see, e.g., Barbosa v. Cargill

22    Meat Sols. Corp, 297 F.R.D. 431, 442 (E.D. Cal. 2013) ("[T]here is no apparent conflict of interest

23    between the named Plaintiffs' claims and those of the other Class Members' – particularly because

24    the named Plaintiffs have no separate and individual claims apart from the Class.").  Thus, "[t]he

25    adequacy-of-representation requirement is met here because Plaintiff[] ha[s] the same interests

26    as the absent Class Members[.]" See Barbosa, 297 F.R.D. at 442.

27    Finally, as noted earlier, adequacy "also factors in competency and conflicts of class

28    counsel." Amchem, 521 U.S. at 626 n. 20, 117 S.Ct. at 2251 n. 20.  Having reviewed the

1    declaration filed by proposed class counsel, (see Dkt. 39-1, Cole Decl. at ¶¶ 3-7, 17), the court is

2    persuaded that there are no issues as to the adequacy of representation.  See Barbosa, 297

3    F.R.D. at 443 ("There is no challenge to the competency of the Class Counsel, and the Court finds

4    that Plaintiffs are represented by experienced and competent counsel who have litigated

5    numerous class action cases.").

6        B.      Rule 23(b) Requirements.

7        Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can

8    be served best by settling their differences in a single action." Hanlon, 150 F.3d at 1022 (internal

9    quotation marks omitted).  The rule requires two different inquiries, specifically a determination as

10   to whether:  (1) "questions of law or fact common to class members predominate over any

11   questions affecting only individual members[;]" and (2) "a class action is superior to other available

12   methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); see

13   Spann II, 314 F.R.D. at 321-22 (same).

14            1.      **Predominance**.

15       "[T]he general rule [is] that predominance is easier to satisfy in the settlement context."

16   Jabbari v. Farmer, 965 F.3d 1001, 1006 (9th Cir. 2020).  "To determine whether a class satisfies

17   the [predominance] requirement, a court pragmatically compares the quality and import of

18   common questions to that of individual questions."  Id. at 1005.  "[T]he predominance analysis

19   under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the

20   case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by

21   representation." Abdullah, 731 F.3d at 964 (internal quotation marks omitted); see also Amchem,

22   521 U.S. at 623, 117 S.Ct. at 2249 ("The Rule 23(b)(3) predominance inquiry tests whether

23   proposed classes are sufficiently cohesive to warrant adjudication by representation.").  "If a

24   common question will drive the resolution [of the litigation], even if there are important questions

25   affecting only individual members, then the class is sufficiently cohesive to warrant adjudication

26   by representation." Jabbari, 965 F.3d at 1005 (internal quotation marks omitted); see Abdullah,

27   731 F.3d at 964 ("Rule 23(b)(3) requires [only] a showing that questions common to the class

28   predominate, not that those questions will be answered, on the merits, in favor of the class.")

1    (internal quotation marks omitted) (brackets in original).  Finally, the class damages must be

2    sufficiently traceable to plaintiff's liability case.  See Comcast Corp. v. Behrend, 569 U.S. 27, 35,

3    133 S.Ct. 1426, 1433 (2013).

4         Here, plaintiffs have shown that questions common to the class, such as whether

5    defendant's false reference pricing scheme violated the UCL, FAL, and CLRA, predominate this

6    litigation.  (See Dkt. 39, Motion at 12).  The determination of these questions "can be resolved

7    using the same evidence[,]" (id. at 12-13), and will establish defendant's liability on a class-wide

8    basis.  See, e.g., Spann I, 307 F.R.D. at 521 (concluding the predominance requirement was met

9    with respect to the plaintiff's UCL, FAL, and CLRA claims where, among other things, evidence

10   that "defendant operated a systematic and pervasive unlawful price comparison policy . .  is

11   common to all putative class members and predominates over any individual facts or questions").

12   In other words, "despite the existence of minor factual differences between the potential class

13   members," the answers to these questions would drive the resolution of the litigation, "as the

14   common issues predominate over varying factual predicates[.]"   See Clesceri v. Beach City

15   Investigations & Protective Servs., Inc., 2011 WL 320998,*7 (C.D. Cal. 2011) (internal quotation

16   marks omitted); Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453, 136 S.Ct. 1036, 1045

17   (2016) ("When one or more of the central issues in the action are common to the class and can

18   be said to predominate, the action may be considered proper under Rule 23(b)(3) even though

19   other important matters will have to be tried separately, such as damages or some affirmative

20   defenses peculiar to some individual class members.") (internal quotation marks omitted).  Finally,

21   the relief sought applies to all class members and is traceable to plaintiff's liability case.  See

22   Comcast, 569 U.S. at 35, 133 S.Ct. at 1433.  In short, the court is persuaded that "[a] common

23   nucleus of facts and potential legal remedies dominates this litigation."  Hanlon, 150 F.3d at 1022.

24         2.    **Superiority**.

25        "The superiority inquiry under Rule 23(b)(3) requires determination of whether the

26   objectives of the particular class action procedure will be achieved in the particular case" and

27   "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution."

28   Hanlon, 150 F.3d at 1023 (internal citation omitted).  Rule 23(b)(3) provides a list of four non-

1    exhaustive factors relevant to superiority.  See Fed. R. Civ. P. 23(b)(3)(A)-(D).

2         The first factor considers "the class members' interests in individually controlling the

3    prosecution or defense of separate actions[.]"  Fed. R. Civ. P. 23(b)(3)(A).  "This factor weighs

4    against class certification where each class member has suffered sizeable damages or has an

5    emotional stake in the litigation."  Barbosa, 297 F.R.D. at 444.  Here, Moses does not assert any

6    claims for emotional distress, nor is there any indication that the amount of damages any individual

7    class member could recover is significant or substantially greater than the potential recovery of

8    any other class member.  (See, generally, Dkt. 18, FAC); see also Brazil, 2010 WL 5387831, at

9    *4 (concluding that plaintiffs alleging false reference pricing scheme "clearly meet the superiority

10   requirement, because the class action mechanism provides the only practical means by which

11   [class members] can pursue these claims").  The alternative method of resolution – pursuing

12   individual claims for a relatively modest amount of damages – would likely never be brought, as

13   "litigation costs would dwarf potential recovery."  Hanlon, 150 F.3d at 1023; see Leyva v. Medline

14   Indus., Inc., 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class

15   members' potential individual monetary recovery, class certification may be the only feasible

16   means for them to adjudicate their claims.  Thus, class certification is also the superior method

17   of adjudication."); Bruno v. Quten Research Inst., LLC, 280 F.R.D. 524, 537 (C.D. Cal. 2011)

18   ("Given the small size of each class member's claim, class treatment is not merely the superior,

19   but the only manner in which to ensure fair and efficient adjudication of the present action.").  In

20   short, "there is no evidence that Class members have any interest in controlling prosecution of

21   their claims separately nor would they likely have the resources to do so."  Munoz v. PHH Corp.,

22   2013 WL 2146925, *26 (E.D. Cal. 2013).

23        The second factor is "the extent and nature of any litigation concerning the controversy

24   already begun by or against class members[.]"  Fed. R. Civ. P. 23(b)(3)(B).  While any class

25   member who wishes to control his or her own case may opt out of the class, see Fed. R. Civ. P.

26   23(c)(2)(B)(v), "other pending litigation is evidence that individuals have an interest in controlling

27   their own litigation."  4 Newberg on Class Actions § 4:70 (6th ed. 2024) (emphasis omitted).  Here,

28   there is no indication that any class member is involved in any other litigation concerning the

1    claims in this case.  (See Dkt. 39, Motion at 12-14); (Dkt. 39-1, Cole Decl. at ¶ 25); Barbosa, 297

2    F.R.D. at 444 ("The Court does not have any information that litigation concerning this controversy

3    is currently being pursued by or against the class members; thus, this factor is neutral.").

4         The third factor is "the desirability or undesirability of concentrating the litigation of the

5    claims in the particular forum[,]" and the fourth factor is "the likely difficulties in managing a class

6    action."  See Fed. R. Civ. P. 23(b)(3)(C)-(D).  As noted above, "[i]n the context of settlement . . .

7    the third and fourth factors are rendered moot and are irrelevant."  Barbosa, 297 F.R.D. at 444;

8    see Amchem, 521 U.S. at 620, 117 S.Ct. at 2248 ("Confronted with a request for settlement-only

9    class certification, a district court need not inquire whether the case, if tried, would present

10   intractable management problems, . . . for the proposal is that there be no trial.") (citation omitted);

11   In re Hyundai, 926 F.3d at 556-57 ("The criteria for class certification are applied differently in

12   litigation classes and settlement classes.  In deciding whether to certify a litigation class, a district

13   court must be concerned with manageability at trial.  However, such manageability is not a

14   concern in certifying a settlement class where, by definition, there will be no trial.").

15        The only factors in play here weigh in favor of class treatment.  Further, the filing of

16   separate suits by nearly 38,383 class members, (see Dkt. 39-1, Cole Decl. at ¶ 14), "would create

17   an unnecessary burden on judicial resources."  Barbosa, 297 F.R.D. at 445.  Under the

18   circumstances, the court finds that the superiority requirement is satisfied.

19   II.  FAIRNESS, REASONABLENESS, AND ADEQUACY OF THE PROPOSED

20        SETTLEMENT.

21        A.    The Settlement is the Product of Arm's-Length Negotiations.

22        Pursuant to Rule 23(e)(2)(B), the court must evaluate whether the settlement was

23   negotiated at arm's length.  Here, the settlement negotiations were supervised by a mediator and

24   were conducted at "arm's-length[,]" after the parties had "exchanged mediation briefs" and plaintiff

25   had "received Arhaus's initial discovery responses," including "information regarding the total

26   number of California consumers included in the proposed class and the total value of sales made

27   by California consumers through Arhaus's website."  (See Dkt. 39-1, Cole Decl. at ¶¶ 9-12, 15,

28   20).  According to plaintiff's counsel, the Agreement was "based on various factors, including: the

nature of Arhaus's deceptive trade practices; the timing of the Settlement in the case's early stages; Arhaus's willingness to make immediate changes to its sales practices; and the benefits to Settlement Class Members in comparison to other false reference pricing cases." (See id. at ¶ 15).    Plaintiff's counsel believes "this is the largest settlement ever reached on a per-class-member basis in a false markdown case." (Id. at ¶¶ 18-19).    The Agreement also indicates that plaintiff's counsel "conducted a thorough investigation into the facts of this case and have diligently pursued an investigation of Arhaus's price comparison advertising policies and practices, including, but not limited to: (i) researching the applicable law and the potential defenses; (ii) reviewing and analyzing Arhaus's public filings and documents concerning its advertising, pricing and promotional practices, and reviewing and analyzing Arhaus's sales data for products sold since April 2, 2020, including those materials obtained in discovery; [and] (iii) conducting online reviews to determine and document Arhaus's pricing practices throughout the Litigation[.]" (Dkt. 39-1, Exh. 1, Agreement at ¶ 3.4).

Based on the evidence and record before the court, the court is persuaded that the parties thoroughly investigated and considered their own and the opposing party's positions.    The parties had a sound basis for measuring the terms of the settlement against the risks of continued litigation, and there is no evidence that the settlement is the product of fraud or overreaching by, or collusion between, the negotiating parties.    See, e.g., Spann II, 314 F.R.D. at 323-25 (finding no evidence that a class action settlement was the product of fraud or collusion between the parties); Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009) (affirming final approval of class action settlement where there was "no evidence of fraud, overreaching, or collusion").

   B.    The Amount Offered in Settlement Falls Within a Range of Possible Judicial Approval and is a Fair and Reasonable Outcome for Class Members.

      1.    **Recovery for Class Members.**

As noted above, class members will share in a non-reversionary gross settlement amount of $6,000,000.  (See Dkt. 39-1, Exh. 1, Agreement at ¶¶ 4.6, 4.6.1.1); (Dkt. 39, Motion at 5).  If the anticipated attorney's fees, costs, incentive award, and settlement costs are granted, the net settlement amount will be approximately $4,280,220, which would result in an average net

individual payment of $446.04, assuming a 25% claims rate.  (See Dkt. 39, Motion at 22).  Based

on an estimated total sales figure of $75 million during the relevant period, plaintiff estimates the

markdown or "false transaction value promised by [Arhaus]" to be about $30 million.  (See id. at

18); (Dkt. 39-1, Cole Decl. at ¶ 27); cf. Spann I, 307 F.R.D. at 530 (approving of "false transaction

value" as a potential restitution measure in a false reference pricing case).   Assuming the

estimated maximum value of the claims, without adjusting for risk, was $30 million, then the gross

settlement amount is approximately 20% of the maximum class damages.  (See Dkt. 39, Motion

at 18).  In addition, given that the appropriate measure to calculate damages in a false-markdown

case remains unsettled, the court finds the "guaranteed, fixed, immediate, and substantial

recovery" of $6,000,000 million to be significant.   See Spann II, 314 F.R.D. at 327 ("[E]ven if

plaintiff successfully proved her case at trial, the amount of restitution recovered, if any, could vary

widely depending on a number of factors, including the court's discretion as to whether and how

much to award in restitution, discovery and analysis regarding the appropriate method by which

to calculate such an award[.]").

Under the circumstances, the court is persuaded that the settlement is fair, reasonable, and

adequate, particularly when viewed in light of the litigation risks and the costs, and delay of trial

and appeal.  See Fed. R. Civ. P. 23(e)(1)(B)(i) & (e)(2)(C)(i); 2018 Adv. Comm. Notes to Rule

23(e)(1) (The types of information that should be provided to the court deciding whether to grant

preliminary approval includes, among other things:  (1) "the extent and type of benefits that the

settlement will confer on the members of the class"; and (2) "information about the likely range of

litigated outcomes, and about the risks that might attend full litigation").  Here, given the significant

risks of litigation coupled with the delays associated with continued litigation, the court is

persuaded that the settlement benefits to the class fall within the range of reasonableness.  See,

e.g., In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (holding that "the

[s]ettlement amount of almost $2 million was roughly one-sixth of the potential recovery, which,

given the difficulties in proving the case, [was] fair and adequate"); Rodriguez v. W. Publ'g. Corp.,

563 F.3d 948, 964 (9th Cir. 2009) (affirming settlement approval where the settlement represented

30% of the damages estimated by the class expert); In re Uber FCRA Litig., 2017 WL 2806698,

1  *7 (N.D. Cal. 2017) (granting preliminary approval of settlement that was worth "7.5% or less" of

2  the expected value); see also Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir.

3  1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery

4  does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be

5  disapproved.") (internal quotation marks omitted).

2.      **Release of Claims**.

7      The court must also consider whether the settlement contains an overly broad release of

8  liability.  See 4 Newberg on Class Actions § 13:15 (6th ed. 2024) ("Beyond the value of the

9  settlement, courts have rejected preliminary approval when the proposed settlement contain[s]

10 obvious substantive defects such as . . . overly broad releases of liability."); see, e.g., Fraser v.

11 Asus Comput. Int'l, 2012 WL 6680142, *3 (N.D. Cal. 2012) (denying preliminary approval of

12 proposed settlement that provided defendant a "nationwide blanket release" in exchange for

13 payment "only on a claims-made basis[,]" without the establishment of a settlement fund or any

14 other benefit to the class).

15      Here, class members who do not exclude themselves from the settlement will release

16      any and all claims. . . of any and every kind that were alleged in the FAC, or

17      that could have been asserted but were not alleged in the FAC or in any

18      other court or forum, whether known or unknown, on the basis of, connected

19      with, arising out of, or related in whole or in part to any or all of the alleged

20      acts, omissions, facts, matters, transactions, circumstances, and occurrences

21      that were directly or indirectly alleged, asserted, described, set forth, or

22      referred to in the allegations of the FAC whether such allegations were or

23      could have been based on common law or equity, or on any statute, rule,

24      regulation, order, or law, whether federal, state, or local, including, without

25      limitation, claims under federal or state unfair competition and false

26      advertising laws[.]

27 (Dkt. 39-1, Exh. 1, Agreement at ¶ 4.7.1).  With the understanding that, under the release,

28 settlement class members are not giving up any claims unrelated to those asserted in this action,

1   the court finds that the release adequately balances fairness to absent class members and

2   recovery for the class with defendant's business interest in ending this litigation.  See Fraser, 2012

3   WL 6680142, at *4 (recognizing defendant's "legitimate business interest in 'buying peace' and

4   moving on to its next challenge" as well as the need to prioritize "[f]airness to absent class

5   member[s]").

6         C.     The Settlement Agreement Does Not Improperly Grant Preferential Treatment to the

7             Class Representative.

8           Pursuant to Rule 23(e)(2)(D), the court must evaluate whether the settlement "treats class

9   members equitably relative to each other."  The Ninth Circuit has "repeatedly held that reasonable

10  incentive awards to class representatives are permitted," In Re Apple Inc. Device Performance

11  Litig., 50 F.4th 769, 785 (9th Cir. 2022) (internal quotation marks omitted), and has instructed

12  "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of

13  the class representatives."  Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1163 (9th Cir.

14  2013).  The court must examine whether there is a "significant disparity between the incentive

15  awards and the payments to the rest of the class members" such that it creates a conflict of

16  interest.  See id. at 1165 (The court cast doubt, but did not rule on, "whether class representatives

17  could be expected to fairly evaluate whether awards ranging from $26 to $750 is a fair settlement

18  value when they would receive $5,000 incentive awards.").  "In deciding whether [an incentive]

19  award is warranted, relevant factors include the actions the plaintiff has taken to protect the

20  interests of the class, the degree to which the class has benefitted from those actions, and the

21  amount of time and effort the plaintiff expended in pursuing the litigation."  Cook v. Niedert, 142

22  F.3d 1004, 1016 (7th Cir. 1998).

23          Here, the Agreement provides for a service payment of up to $5,000 for plaintiff.  (Dkt. 39-1,

24  Exh. 1, Agreement at ¶ 4.6.1.2).  Under the circumstances, the court tentatively finds that an

25  incentive payment of $5,000 for plaintiff is appropriate.  See Dyer v. Wells Fargo Bank, N.A., 303

26  F.R.D. 326, 335 (N.D. Cal. 2014) (finding $5,000 incentive award to be reasonable).

27        D.     Class Notice and Notification Procedures.

28          Upon settlement of a certified class, "[t]he court must direct notice in a reasonable manner

1    to all class members who would be bound by the proposal[.]"  Fed. R. Civ. P. 23(e)(1)(B).  Rule

2    23(c)(2) requires the "best notice that is practicable under the circumstances, including individual

3    notice" of particular information.  See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements

4    for classes certified under Rule 23(b)(3)).

5         "The standard for the adequacy of a settlement notice in a class action under either the Due

6    Process Clause or the Federal Rules is measured by reasonableness."  Wal-Mart Stores, Inc. v.

7    Visa U.S.A., Inc., 396 F.3d 96, 113 (2d Cir. 2005); Low v. Trump Univ., LLC, 881 F.3d 1111, 1117

8    (9th Cir. 2018) ("The yardstick against which we measure the sufficiency of notices in class action

9    proceedings  is  one  of  reasonableness.") (internal  quotation  marks  omitted).   A  class  action

10   settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient

11   detail to alert those with adverse viewpoints to investigate and to come forward and be heard."

12   Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks

13   omitted); see also Gooch v. Life Invs. Ins. Co. of Am., 672 F.3d 402, 423 (6th Cir. 2012)

14   (Settlement notices "are sufficient if they inform the class members of the nature of the pending

15   action, the general terms of the settlement, that complete and detailed information is available

16   from the court files, [and] that any class member may appear and be heard at the hearing[.]")

17   (internal quotation marks omitted).  The notice should provide sufficient information to allow class

18   members to decide whether they should accept the benefits of the settlement, opt out and pursue

19   their own remedies, or object to the terms of the settlement but remain in the class.  See In re

20   Integra Realty Res., Inc., 262 F.3d 1089, 1111 (10th Cir. 2001) ("The standard for the settlement

21   notice under Rule 23(e) is that it must 'fairly apprise' the class members of the terms of the

22   proposed settlement and of their options.") (internal quotation marks omitted).

23        Here, class members will receive direct notice via email, mail, and/or text message, (see

24   Dkt. 39-1, Exh. 1, Agreement at ¶¶ 4.4, 4.5.1, 4.5.2, 4.5.3); (Dkt. 39-1, Exh. E, Email Notice at

25   ECF 64-66); (Dkt. 39-1, Exh. F, Postcard Notice at ECF 67-69); (Dkt. 39-1, Exh. G, Text Message

26   Notice at ECF 70-71), which will include a link to the settlement website and the long-form website

27   notice available therein.  (See Dkt. 39-1, Exh. H, Class Notice ("Website Notice")).  The Website

28   Notice describes the nature of the action and the claims asserted in the operative complaint.  (See

1  id. at 3); see also Fed. R. Civ. P. 23(c)(2)(B)(i) & (iii).  It provides the definition of the class, (see

2  Dkt. 39-1, Exh. H, Website Notice at 1, 3-4); see also Fed. R. Civ. P. 23(c)(2)(B)(ii), and explains

3  the terms of the settlement, including the settlement amount, the distribution of that amount, and

4  the release, as well as the proposed attorney's fees and expenses, and incentive payment.  (See

5  Dkt. 39-1, Exh. H, Website Notice at 4-6).  The Website Notice includes an explanation that lays

6  out the class members' options under the settlement:  they may remain in the class, object to the

7  settlement but still remain in the class (including by appearing through their own attorney), or

8  exclude themselves from the settlement and pursue their claims separately against defendant.

9  (See id. at 4-8; see also Fed. R. Civ. P. 23(c)(2)(B)(iv)-(vi).  Finally, the Website Notice explains

10 the procedures for objecting to the settlement and provides information about the Final Approval

11 Hearing.  (See Dkt. 39-1, Exh. H, Website Notice at 6-7).

12        Based on the foregoing, the court finds there is no alternative method of distribution that

13 would be more practicable, or any more reasonably likely to notify the class members.  In addition,

14 the court finds that the procedure for providing notice and the content of the Class Notice

15 constitute the best practicable notice to class members and comply with the requirements of due

16 process.

17        E.      Summary.

18        The court's preliminary evaluation of the settlement does not disclose grounds to doubt its

19 fairness "such as unduly preferential treatment of class representatives or segments of the class,

20 inadequate compensation or harms to the classes, . . . or excessive compensation for attorneys."

21 Manual for Complex Litig. § 21.632 at 321 (4th ed. 2023); see also Spann II, 314 F.R.D. at 323

22 (same).

23                              **CONCLUSION**

24        Based on the foregoing, IT IS ORDERED THAT:

25        1.  Plaintiff's Amended Motion for Preliminary Approval of Class Action Settlement and

26 Certification of Settlement Class **(Document No. 39)** is **granted** upon the terms and conditions

27 set forth in this Order.

28        2.  The court preliminarily certifies the class, as defined in ¶ 2.1.30 of the Settlement

Agreement, (Dkt. 39-1, Exh. 1, Agreement), for the purposes of settlement.

3.   The court preliminarily appoints plaintiff Mariah Moses as class representative for settlement purposes.

4.   The court preliminarily appoints Kevin J. Cole from KJC Law Group, APC, as class counsel for settlement purposes.

5.   The court preliminarily finds that the terms of the settlement are fair, reasonable and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure.

6.   The court approves the form, substance, and requirements of the proposed notice program.  (See Dkt. 39-1, Exh. H, Website Notice); (Dkt. 39-1, Exh. E, Email Notice at ECF 64-66); (Dkt. 39-1, Exh. F, Postcard Notice at ECF 67-69); (Dkt. 39-1, Exh. G, Text Message Notice at ECF 70-71).  The proposed manner of notice of the settlement set forth in the Settlement Agreement constitutes the best notice practicable under the circumstances and complies with the requirements of due process.

7.   The court appoints ILYM Group, Inc. as settlement administrator.  ILYM shall complete dissemination of class notice, in accordance with the proposed notice plan, no later than **October 20, 2025**.

8.   Plaintiff shall file a motion for attorney's fees and costs, as well as any incentive payment, no later than **November 19, 2025**, and notice it for hearing for the date of the final approval hearing set forth below.

9.   Any class member who wishes to: (a) object to the settlement, including the requested attorney's fees, costs and incentive award; or (b) exclude him or herself from the settlement, must file his or her objection to the settlement or request exclusion no later than **December 19, 2025**, in accordance with the Website Notice and this Order.

10.  Plaintiff shall, no later than **January 20, 2026**, file and serve a motion for final approval of the settlement and a response to any objections to the settlement.  The motion shall be noticed for hearing for the date of the final approval hearing set forth below.

11.   Defendant may file and serve a memorandum in support of final approval of the Settlement Agreement and/or in response to objections no later than **January 27, 2026.**

1       12. Any class member who wishes to appear at the final approval (fairness) hearing, either

2 on his or her own behalf or through an attorney, to object to the settlement, including the

3 requested attorney's fees, costs or incentive awards, shall, no later than **February 12, 2026**, file

4 with the court a Notice of Intent to Appear at Fairness Hearing.

5       13. A final approval (fairness) hearing is hereby set for **February 19, 2026**, at **10:00 a.m.**

6 in Courtroom 6D of the First Street Courthouse, to consider the fairness, reasonableness, and

7 adequacy of the Settlement Agreement as well as the award of attorney's fees and costs to class

8 counsel, and incentive award to the named plaintiff.

9       14. All proceedings in the Action, other than proceedings necessary to carry out or enforce

10 the Settlement Agreement or this Order, are stayed pending the final fairness hearing and the

11 court's decision whether to grant final approval of the settlement.

12 Dated this 25th day of August, 2025.

13                                 /s/

14                            Fernando M. Olguin
                      United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28